*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0087P (6th Cir.)
File Name: 00a0087p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

Louis Holiday,
    *Plaintiff-Appellant,*

    *v.*      No. 98-5619

City of Chattanooga,
    *Defendant-Appellee.*



Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 97-00354—R. Allan Edgar, Chief District Judge.

Argued: August 13, 1999

Decided and Filed: March 10, 2000

Before: KEITH, BOGGS, and CLAY, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Chip Rowan, ROWAN & NEIS, Atlanta, Georgia, for Appellant. Michael A. McMahan, CITY ATTORNEY'S OFFICE, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** Chip Rowan, ROWAN & NEIS, Atlanta, Georgia, for Appellant. Michael A. McMahan, Kenneth O. Fritz, CITY ATTORNEY'S OFFICE, Chattanooga, Tennessee, for Appellee.

1

---

**OPINION**

---

CLAY, Circuit Judge.  Plaintiff, Louis Holiday, brought suit against Defendant, the City of Chattanooga ("the City"), under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Vocational Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*, charging that the City refused to hire him as a police officer because he is infected with the human immunodeficiency virus ("HIV"), the virus that causes Acquired Immunodeficiency Syndrome ("AIDS"). The City had extended Holiday an employment offer contingent upon his passing a physical examination required by state statute;  at this examination, Holiday voluntarily informed the physician engaged by the City of his HIV status. This physician subsequently advised the City that Holiday had not passed the medical examination because, in the doctor's opinion, Holiday was not strong enough to withstand the rigors of police work.

The district court dismissed Holiday's suit on summary judgment on grounds that Holiday was not "otherwise qualified" for the position.  On appeal, Holiday contends that summary judgment was improper because a genuine issue of material fact exists as to whether the City improperly refused to hire him because of his disability, where (i) the physician's opinion was not the product of the individualized inquiry mandated by the ADA, and is at odds with substantial evidence indicating that Holiday was in fact physically capable of performing as a police officer; and (ii) there is evidence that the City withdrew its offer to Holiday because of its fears that he would transmit HIV on the job.  We agree. For the reasons set forth below, we **REVERSE** the district court's grant of summary judgment on behalf of the City.

**I.**

Holiday is currently a police officer with the Tennessee Capitol Police, where he has been employed since May of

1997. He has also had various degrees of experience as a police officer with several other jurisdictions in Tennessee, including the Springfield Police Department ("PD"), the Murfreesboro PD, the Tennessee State University PD and the Nashville Metro PD.

In April of 1993, Holiday submitted an application to the City for employment as a police officer. He passed a written examination and also successfully completed a physical agility test in September of 1993. The physical agility test consisted of various tests of physical strength and endurance including running, jumping hurdles, an obstacle course and carrying heavy weights. The City's police department subsequently contacted Holiday in October of 1994 and invited him to an interview on October 11, 1994, with the Administrator of the City's Department of Safety, Ervin Dinsmore, and Police Chief Ralph Cothran. After the interview, Dinsmore made Holiday a conditional offer of employment subject to Holiday's successful completion of physical and psychological examinations. All applicants for the position of police officer are required by Tennessee law to pass a physical examination administered by a licensed physician. TENN. CODE ANN. § 38-8-106(7) (1997).

The City has contracted with outside health care providers, including Memorial Hospital in Chattanooga, to perform the post-offer physical examinations required by statute. Donna Kelley, the City's Personnel Director, testified that the City worked with these medical providers to determine the components of the physical examinations; the City supplied information as to what the job of police officer involves, and together with the health care providers, mutually determined the scope of the examinations. The City does not normally test employment applicants for HIV or AIDS; nor does it have a policy requiring that all persons who apply for a position as a police officer must test negative for HIV.

Pursuant to its contract with Memorial Hospital, the City referred Holiday to Dr. Steve Dowlen, M.D., a physician on staff at the hospital, for Holiday's pre-employment physical

examination. Dr. Dowlen examined Holiday on October 21, 1994, at which time Holiday voluntarily informed the doctor that he was infected with HIV. Holiday also told Dr. Dowlen that he had been diagnosed as borderline anemic since he was in high school. According to Holiday, at the conclusion of the physical examination, Dr. Dowlen told him that he had passed.

However, after the physical examination was completed, a person from Dr. Dowlen's office telephoned Donna Kelley, and advised her that Holiday had failed the examination. Kelley was told that she should obtain a copy of the medical report and discuss it further with Dr. Dowlen. According to Kelley, she gathered that Holiday was HIV positive and suffered from an AIDS-related health problem.

Kelley obtained the medical report filled out by Dr. Dowlen, which, among other things, asked the following question: "Is person physically fit to perform strenuous activity that may be necessary in police work?" Dr. Dowlen had answered this question "No". In the comments accompanying his answer, Dr. Dowlen wrote: "anemia with lymphocytosis, lymph nodes in both axillae -- needs further evaluation by his physician since history by patient of HIV+ 3-4 years." (J.A. at 201-02.) Shortly after she received the medical report, Kelley spoke with Dr. Dowlen, who told her that Holiday was anemic and had problems with his lymph nodes, and had some blood abnormalities. Kelley could not recall when asked during her deposition testimony whether Dr. Dowlen stated that the blood abnormalities were HIV or AIDS related. Dr. Dowlen expressed his medical opinion that Holiday was physically unable to perform the duties of a police officer because he was not strong enough to withstand the rigors of police work.

Kelley then discussed the matter with Dinsmore, who ultimately decided not to employ Holiday based on Dr. Dowlen's medical report. Kelley subsequently informed Holiday that the City's conditional offer of employment was withdrawn because he had not passed the physical

evaluated based on his actual abilities and the relevant medical evidence, and to be protected from discrimination founded on fear, ignorance or misconceptions. Holiday has adduced sufficient evidence from which a jury could conclude that the City refused to hire him as a police officer because of its unsubstantiated fears of HIV transmission, despite the absence of objective medical evidence that he was physically incapable of performing the essential functions of the position. Accordingly, the district court erred in granting the City's motion for summary judgment.

## V.

For the reasons set forth above, we **REVERSE** the district court's grant of summary judgment on behalf of the City.

placed at risk by the officer having a life-threatening contagious disease include but are not limited to co-workers, other law enforcement, medical personnel, suspects and accident victims.

(J.A. at 97-98.) Based on these and similar facts contained in the record before us, a rational trier of fact could conclude that the City in fact withdrew its employment offer because of its fears that Holiday would transmit HIV on the job.

The Supreme Court has observed that "[f]ew aspects of a handicap give rise to the same level of public fear and misapprehension as contagiousness." *School Board v. Arline*, 480 U.S. 273, 284 (1987). It is for this reason that individuals with such disabilities are in particular need of statutory protection; otherwise "they would be vulnerable to discrimination on the basis of mythology -- precisely the type of injury Congress sought to prevent." *Id.* at 285. The City concedes on appeal that Holiday posed no direct threat to health and safety of others, and, apparently, disavows its earlier assertions to the contrary.[4] In our view, however, the City's abrupt shift of position in the midst of this litigation only contributes in creating a question of fact regarding its true motives in withdrawing the employment offer.

When he applied for a position as a police officer with the City of Chattanooga, Louis Holiday was entitled to be

---

[4]The ADA provides that a disabled individual is not "qualified" for a specific employment position if he poses a "direct threat" to the health or safety of others that cannot be eliminated by a reasonable accommodation. *See* 42 U.S.C. §§ 12111(3), 12113(b). "The determination that an individual poses a 'direct threat' shall be based on an individual assessment of the individual's present ability to safely perform the essential functions of the job. This assessment shall be based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence." 29 C.F.R. 1630.2(r). Relevant factors include (i) the duration of the risk; (ii) the nature and potential severity of the potential harm; (iii) the likelihood that the potential harm will occur; and (iv) the imminence of the potential harm. *Id.*

examination. Holiday testified that when he asked why, Kelley answered that she could not "put other employees and the public at risk by hiring you." (J.A. at 173-74.) This position was subsequently repeated in the City's answers to interrogatories during discovery. The City was asked to "further describe each and every way in which any medical condition, based upon which Defendant or Dr. Dowlen disqualified Mr. Holiday from employment with Defendant, is incompatible with the work requirements" of a police officer. The City responded that Holiday's HIV status rendered him a health and safety threat to others, based on the possibility of blood-to-blood contact during police work. On appeal, the City has abandoned its prior assertion that Holiday's HIV status rendered him a direct threat to the health or safety of others, and now claims that his HIV seropositivity played absolutely no role in its decision to withdraw the employment offer.

On June 19, 1997, Holiday filed suit in district court alleging that the City had violated the ADA and the Rehabilitation Act by refusing to hire him due to his HIV-positive status. Following discovery, the court granted the City's motion for summary judgement. This appeal followed.

## II.

We review a grant of summary judgment *de novo*. *DePiero v. City of Macedonia*, 180 F.3d 770, 776 (6th Cir. 1999). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). As the party moving for summary judgment, the City bears the burden of showing the absence of a genuine issue of material fact as to at least one essential element of Holiday's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If Holiday, as the non-moving party, presents evidence from which a jury might return a verdict in his favor, summary judgment may not be granted. *See Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In considering the City's motion for summary judgment, we accept Holiday's evidence as true and draw all reasonable inferences in his favor. *Id.* The facts and inferences drawn therefrom are thus viewed in the light most favorable to Holiday. *DePiero*, 180 F.3d at 776. Ultimately, we must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996) (quoting *Anderson*, 477 U.S. at 251-52).

## III.

The ADA protects employees and job applicants from discrimination based on their disabilities. The statute provides that no covered employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (1994). The ADA defines the term "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (1994).

Accordingly, to prevail on his claim of unlawful employment discrimination under the ADA and the Rehabilitation Act, Holiday must demonstrate: (i) that he is an individual with a disability; (ii) that he is otherwise qualified to perform the job requirements, with or without reasonable accommodation; and (iii) that he suffered an adverse employment action "because of" his disability.[1] *See*

---

[1] By statute, ADA standards govern Rehabilitation Act claims of employment discrimination. *See* 29 U.S.C. § 794(d); *Andrews v. State of Ohio*, 104 F.3d 803, 807 (6th Cir. 1997). As a result, all subsequent references to the ADA apply with equal force to Holiday's Rehabilitation

physically capable of performing the strenuous activity that police work may require; among other things, Holiday had served as a police officer in several other Tennessee jurisdictions, and had successfully completed the City's own rigorous physical agility test.

Moreover, although the City on appeal claims that Holiday's HIV status was not a factor in its decision to withdraw the employment offer, Holiday has adduced direct evidence to the contrary. In her affidavit, Kelley stated that when she first learned that Holiday had not passed the physical examination administered by Dr. Dowlen, she was told that Holiday was HIV-positive and suffered from an AIDS-related health problem.[3] Within hours the City opted to withdraw its employment offer. Holiday testified that when he subsequently asked Kelley why the offer had been withdrawn, she answered that she could not "put other employees and the public at risk by hiring you." (J.A. at 173-74.) The City then repeated this assertion during discovery. Holiday asked the City to further describe how any medical condition, based upon which Dr. Dowlen or the City had disqualified Holiday from employment, was incompatible with the work requirements of a police officer. The City responded to an Interrogatory by stating that Holiday's HIV status rendered him a health and safety threat to others:

> The use of force to subdue suspects and to assist injured persons are essential job functions as a police officer. Wrestling, running and striking are common occurrences in subduing suspects. In such encounters, it is likely that both the officer and the suspect will be injured, resulting in the possibility of blood exchange. Persons who are

---

[3] In her subsequent deposition testimony, Kelley claimed that she could not recall whether she had been told that Holiday was HIV-positive or at risk for AIDS, but only that he had been identified as suffering from some sort of "blood disorder." Nonetheless, she conceded that it was her understanding from speaking with Dr. Dowlen's office that Holiday was not capable of performing as a police officer because he had a life-threatening, contagious disease.

Supp. 965, 973 (S.D. Tex. 1996) (holding that bus company was not entitled to rely on medical report stating that job applicant had not passed statutorily required physical examination, where the employer could determine from the report that the doctor's opinion was not supported by any objective medical findings and instead was improperly based on a perceived disability; under such circumstances, the employer knew or should have known that its refusal to hire the applicant "on the basis of [the doctor's] faulty opinion was both improper and violative of the ADA").

Accordingly, we conclude that summary judgment was improper because there exists a genuine issue of material fact as to whether Holiday was "otherwise qualified" to perform the essential functions of the position of police officer for the City.

## IV.

We next consider whether Holiday had presented sufficient evidence that his employment offer was withdrawn "because of" his disability so as to survive summary judgment. We believe that he has. While the City asserts that Holiday was not hired for the non-discriminatory reason that he did not fulfill the statutory requirements, Holiday has set forth sufficient evidence from which a jury could conclude that this proffered reason is mere pretext. As discussed in more detail above, the absence of any objective medical and scientific support for Dr. Dowlen's opinion casts doubt on the City's purported reliance on the physician's report. This is especially true in light of all of the evidence -- again, available to the City at the time -- that Holiday was in fact

---

fails a physical examination, nothing prevented the City from sending Holiday back to Dr. Dowlen for further tests or to another licensed physician for a second opinion. *See* TENN. CODE ANN. § 38-8-106 (1997) (qualifications of police officers). Indeed, the City admits that on occasion job applicants have been sent for additional procedures or follow-up examinations when prescribed by the examining physician; for example, applicants who initially showed a positive tuberculosis test were sent back for a confirmatory test.

---

42 U.S.C. § 12112(a); 29 U.S.C. § 794; *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996). The City concedes that as an HIV-positive individual, Holiday has a statutory disability. However, the City argues that Holiday cannot prove the remaining elements of his claim. The City maintains that it withdrew its conditional offer only because Holiday did not fulfill an essential requirement of the position: that he pass the physical examination mandated by state law. As a result, the City claims that Holiday was not "otherwise qualified" for the position; and that the offer was withdrawn not because of any disability, but because Holiday did not fulfill the statutory requirements.

The district court agreed with the City's contentions, holding that Holiday had not shown that he was "otherwise qualified" to perform the essential functions of the job of police officer because he had not passed the physical examination required by state statute. The court below stated: "The City had a right to reasonably rely on Dr. Dowlen's expert medical opinion when the City made the decision to withdraw its conditional offer of employment to Holiday." (J.A. at 287.) We disagree. We hold instead that the district court erred in accepting Dr. Dowlen's report as dispositive evidence of Holiday's alleged inability to serve as a police officer, where (i) there is no indication that the physician conducted the individualized inquiry mandated by the ADA, and (ii) Holiday has adduced sufficient evidence to raise an issue of fact as to whether he is otherwise qualified to perform as a police officer.

## A.

"'The thesis of the [ADA] is simply this: That people with disabilities ought to be judged on the basis of their abilities; they should not be judged nor discriminated against based on unfounded fear, prejudice, ignorance, or mythologies; people ought to be judged on the relevant medical evidence and the

---

Act claim.

abilities they have.'" *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998) (quoting 136 Cong. Rec. S 7422-03, 7347 (daily ed. June 6, 1990) (statement of Sen. Harkin)) (alteration in original). The ADA thus serves to "prohibit employers from making adverse employment decisions based on stereotypes and generalizations associated with the individual's disability rather than on the individual's actual characteristics." *EEOC v. Prevo's Family Mkt., Inc.*, 135 F.3d 1089, 1097 (6th Cir. 1998) (holding that an employer may require an HIV test for a food-handling employee who works with knives as part of an individualized inquiry into the existence of a health or safety risk).

The ADA mandates an individualized inquiry in determining whether an employee's disability or other condition disqualifies him from a particular position. In order to properly evaluate a job applicant on the basis of his personal characteristics, the employer must conduct an individualized inquiry into the individual's actual medical condition, and the impact, if any, the condition might have on that individual's ability to perform the job in question. *See, e.g., Estate of Mauro v. Borgess Med. Cen.*, 137 F.3d 398 (6th Cir.) (conducting an individualized inquiry into the plaintiff's specific situation to determine whether HIV-positive surgical technician was otherwise qualified for his position despite his medical condition), *cert. denied*, 119 S. Ct. 51 (1998); *Wilson v. Chrysler Corp.*, 172 F.3d 500, 505 (7th Cir. 1999) (stating that "the ADA requires an individualized inquiry into the ability of the employee to perform a particular job"). Indeed, the Supreme Court in a recent triad of cases has again made clear that such an individualized determination -- one which focuses on the medical condition's actual effect on the specific plaintiff -- lies at the heart of the ADA. *See Sutton v. United Air Lines, Inc.*, 119 S. Ct. 2139, 2147 (1999) (holding that mitigating or corrective measures must be taken into account in judging whether an individual possesses a disability because doing otherwise would "run[] directly counter to the individualized inquiry mandated by the ADA"); *Murphy v. United Parcel Serv., Inc.,* 119 S. Ct. 2133 (1999) (holding that a truck driver with high blood pressure did not

the meaning of the Rehabilitation Act, and filed judgment on behalf of the TVA following a bench trial. The lower court explained:

> [The TVA was] entitled to rely upon the letter of plaintiff's treating physician in determining that the plaintiff was not capable of returning to work. The court also finds that the report was detailed and lengthy and that [the TVA] had no duty to inquire further of [plaintiff's private physician] with regard to plaintiff's ability to return to work.

*Id.* at 441. On appeal, we upheld the district court's finding that the plaintiff was not a qualified handicapped person within the meaning of the Rehabilitation Act. Noting the thoroughness of the private psychiatrist's report, we agreed that the TVA was entitled to terminate the plaintiff because it reasonably believed, based primarily on the medical report, that it could not accommodate the plaintiff's psychological condition. *Id.* at 442.

This case presents a very different set of facts. Dr. Dowlen's "report" consists of two scribbled lines at the bottom of a boilerplate evaluation form. While the psychiatrist in *Pesterfield* clearly made an individualized determination as to the plaintiff's medical condition and its effect on his ability to fulfill his job requirements, there is no indication that Dr. Dowlen did anything of the sort. Moreover, the record is replete with factual evidence available to the City at the time -- particularly Holiday's successful performance of police jobs that Dr. Dowlen claimed he was unqualified to do -- that flatly contradicted Dr. Dowlen's unsubstantiated conclusion. Under these facts, the City was not entitled to simply rely on the physician's recommendation as the basis for withdrawing its employment offer to Holiday.[2] *See, e.g., EEOC v. Texas Bus Lines*, 923 F.

---

[2] Notably, the City does not contend that Dr. Dowlen's recommendation was final under Tennessee law. Although the City has stated that it does not normally seek second opinions after an applicant

such [medical] examination shall not be used for any purpose inconsistent with [the ADA]." 29 C.F.R. 1630.14(b)(2).

Courts need not defer to an individual doctor's opinion that is neither based on the individualized inquiry mandated by the ADA nor supported by objective scientific and medical evidence. The Supreme Court has expressly rejected the notion "that an individual physician's state of mind could excuse discrimination without regard to the objective reasonableness of his actions." *Bragdon v. Abbott*, 524 U.S. 624, 118 S. Ct. 2196, 2210 (1998) (holding that an individual doctor's unsupported belief that a patient's HIV status rendered her a health risk was not dispositive under the ADA). Instead, "courts should assess the objective reasonableness of the views of health care professionals without deferring to their individual judgments." *Id.*; *see, e.g., Estate of Mauro*, 137 F.3d 398 (upholding hospital's conclusion that continued employment of HIV-positive surgical technician would pose a direct threat to the health of others only after concluding that objective medical and scientific evidence supported the hospital's decision); *Doe v. District of Columbia*, 796 F. Supp. 559 (D.D.C. 1992) (holding that fire department violated the Rehabilitation Act when it withdrew its offer of employment based on the applicant's HIV status, where the department doctor's opinion that HIV status impeded the applicant's ability to perform as a firefighter was contradicted by objective medical evidence concerning the applicant's physical condition and by the testimony of other health care professionals).

This Court's decision in *Pesterfield v. Tennessee Valley Authority*, 941 F.2d 437 (6th Cir. 1991), is instructive. There, an employee sued the TVA for its refusal to clear him as medically able to return to work following hospitalization for psychiatric treatment. The TVA had based its decision in large part on a detailed recommendation from the employee's private psychiatrist, who opined that the employee was unable to return given his current mental condition. *Id.* at 438-39. The district court held that, as a result of his psychological disability, the employee was not a qualified individual within

suffer a "disability" under the ADA where the medication he took allowed him to perform major life activities without substantial limitation); *Albertson, Inc. v. Kirkinburg*, 119 S. Ct. 2162 (1999) (holding that the ADA imposes a statutory obligation to determine the existence of disabilities on a case-by-case basis, based upon the actual effect of the impairment on the life of the individual in question).

## B.

In this case, Holiday has presented sufficient evidence that would allow a jury to conclude that Dr. Dowlen failed to undertake the individualized determination that the ADA requires and instead disqualified Holiday because of his HIV status -- without any indication that Holiday's condition actually impeded his ability to perform as a police officer. Dr. Dowlen's medical report explicitly cited Holiday's HIV-positive status as support for the physician's opinion that he was not fit for police work, and asserted that Holiday needed further evaluation by his personal physician because of his condition. When Dr. Dowlen's office initially informed Donna Kelley that Holiday had failed the exam, she was told that Holiday was HIV positive and suffered from an AIDS-related complex. Significantly, there is no evidence that Holiday's HIV had progressed beyond the asymptomatic stage, or that Holiday actually suffered from any AIDS-related health problems at the time of his physical examination. There is also no evidence on the record that Dr. Dowlen attempted to determine whether Holiday actually experienced fatigue, sluggishness, shortness of breath or any other symptom of physical weakness or lack of endurance -- even after Holiday voluntarily disclosed his HIV status. The doctor's complete failure to investigate the physical effects, if any, of Holiday's HIV status raises a genuine issue of material fact as to whether his subsequent opinion was the product of the ADA-mandated individualized inquiry into Holiday's actual condition. As the Third Circuit recently explained in a related context:

A belief that anyone with . . . HIV infection is substantially limited in a major life activity is a conclusion about the effects of the impairment and only secondarily about the particular employee. An employer with such a belief is failing to make an individualized determination, as the ADA requires, and thus acts at its peril. If an employer believes that a perceived disability inherently precludes successful performance of the essential functions of a job, with or without accommodation, the employer must be correct about the affected employee's ability to perform the job in order to avoid liability; there is no defense of reasonable mistake. Any other outcome would defeat the ADA's attempt to eradicate what may be deeply rooted and seemingly rational presumptions about the abilities of the disabled.

*Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 193 (3d Cir. 1999); *see id.* at 192 (noting that, "under the ADA, it is the employer's burden to educate itself about the varying nature of impairment and to make individualized determinations about affected employees").

Holiday has also adduced significant evidence that, despite his HIV seropositivity, he was in fact qualified to perform as a Chattanooga police officer -- including the performance of strenuous activity that may be necessary in police work. Notably, Holiday passed the physical agility test administered as part of the application process, which included various tests of strength and endurance such as running, jumping hurdles, completing an obstacle course and carrying heavy weights. It is also important that during the time frame that Holiday may have been HIV positive, he had served as a police officer without any limitations on his ability to fulfill the job requirements. Holiday had performed the very functions that Dr. Dowlen deemed him unable to perform. Moreover, the record reflects that, after being rejected by the City, Holiday successfully passed a physical examination required to serve as a police officer for the Tennessee Capitol Police, presumably in satisfaction of TENN. CODE. ANN. § 38-8-106(7) -- the very statute which, the City now claims,

barred his employment in Chattanooga. *See Gilday v. Mecosta County*, 124 F.3d 760, 765-66 (6th Cir. 1997) (holding that the fact that an ADA plaintiff currently holds a position similar to the one from which he was previously terminated constitutes sufficient evidence to create a factual question as to whether the plaintiff was qualified to perform the essential functions of the job).

In short, Dr. Dowlen's recommendation, in addition to being unsupported by any concrete medical findings, is also at odds with the objective evidence on record. These facts -- which could have been ascertained by Dr. Dowlen at the time of the physical -- suggest that, despite his HIV status, Holiday was in fact physically able to withstand the rigors of police work. We agree with Holiday that, under these circumstances, Dr. Dowlen's report at most creates a question of fact as to whether Holiday was qualified to perform the essential functions of the position of police officer.

## C.

The district court thus erred in holding that the City had the right to rely on Dr. Dowlen's unsubstantiated and cursory medical opinion, and in treating the physician's opinion as having settled the question of whether Holiday was qualified for the job. Employers do not escape their legal obligations under the ADA by contracting out certain hiring and personnel functions to third parties. The ADA expressly prohibits employers from "participating in a contractual or other arrangement that has the effect of subjecting a covered entity's qualified applicant or employee to . . . discrimination." 42 U.S.C. § 12112(b)(2); *see Piquard v. City of East Peoria*, 887 F. Supp. 1106, 1124 (C.D. Ill. 1995) (stating that "[s]ection 12112(b)(2) was . . . intended to prohibit an entity from doing through a contractual relationship what it may not do directly"). Moreover, the ADA's prohibitions against employment discrimination expressly extend to medical examinations and inquiries. *See* 42 U.S.C. § 12112(d)(1). Towards this end, the regulations promulgated under the ADA provide that "[t]he results of