*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0223P (6th Cir.)
File Name: 02a0223p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

RONALD STEPHEN
SATTERFIELD,
　　　　*Plaintiff-Appellant,*

　　　*v.*

STATE OF TENNESSEE et al.,
　　　　*Defendants,*

RENATA E. BLUHM, M.D.; and
OCCUPATIENT MEDICAL
SERVICES, P.C.,
　　　　*Defendants-Appellees.*

No. 00-5860

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 98-00323—Curtis L. Collier, District Judge.

Argued: April 26, 2002

Decided and Filed: July 3, 2002

Before:  DAUGHTREY and MOORE, Circuit Judges;
ECONOMUS, District Judge.[*]

––––––––––––––––––

**COUNSEL**

**ARGUED:**    David  S.  Wigler,  LAW  OFFICES  OF
HERBERT  S.  MONCIER,  Knoxville,  Tennessee,  for
Appellant.   Nathan D. Rowell, WATSON, HOLLOW &
REEVES, Knoxville, Tennessee, for Appellees. **ON BRIEF:**
David  S.  Wigler,  LAW  OFFICES  OF  HERBERT  S.
MONCIER, Knoxville, Tennessee, for Appellant.  Nathan D.
Rowell,  WATSON,  HOLLOW  &  REEVES,  Knoxville,
Tennessee, for Appellees.

––––––––––––––––––

**OPINION**

––––––––––––––––––

KAREN  NELSON  MOORE,  Circuit  Judge.   Plaintiff-
Appellant Ronald Stephen Satterfield ("Satterfield") appeals
the district court's partial grant of summary judgment in favor
of Defendants-Appellees, Renata E. Bluhm, M.D. ("Bluhm")
and  Occupatient  Medical  Services,  P.C.  ("Occupatient")
("defendants").    Satterfield,  a  former  employee  of  the
Tennessee Public Service Commission, was terminated from
his position as a Commercial Motor Vehicle Inspector after
Bluhm,  a  physician  in  private  practice  at  Occupatient,
determined from a physical examination that Satterfield was
not qualified for the position.  Satterfield filed suit in state
court  against  the  State  of  Tennessee,  the  Tennessee
Department of Safety and its Commissioner, Bluhm, and
Occupatient, alleging violations of the Americans with
Disabilities Act ("ADA") and the Rehabilitation Act, and
various state laws claims.  The Commissioner, Bluhm, and

––––––––––––––––––

[*] The Honorable Peter C. Economus, United States District Judge for
the Northern District of Ohio, sitting by designation.

to demonstrate that Bluhm and Occupatient violated the ADA for a jury to return a verdict for Satterfield on his state law negligence per se claim, we also conclude that summary judgment for the defendants on Satterfield's negligence per se claim was proper.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the order of the district court granting summary judgment to the defendants on Satterfield's federal claims and state law negligence per se claim.

Occupatient then removed to federal court and moved for summary judgment. Concluding that Bluhm and Occupatient were not "covered entities" for the purposes of Satterfield's ADA and the Rehabilitation Act claims, the district court partially granted their motion and remanded Satterfield's state law claims against them to state court. For the reasons discussed below, we **AFFIRM** the order of the district court partially granting Bluhm's and Occupatient's motion for summary judgment.

## I. BACKGROUND

Satterfield was employed as a Commercial Motor Vehicle Inspector by the Tennessee Public Service Commission ("PSC") in October of 1990. Prior to his employment with the PSC, Satterfield had four back surgeries that left him with a "50% permanent disability to the body as a whole." Joint Appendix ("J.A.") at 341 (Satterfield Aff.). Satterfield was nonetheless able to perform his duties as an inspector until 1996. Effective in July of 1996, the PSC was abolished by the State of Tennessee, and the Tennessee Department of Safety ("Department") took over the functions of the PSC relating to commercial motor vehicle enforcement. On May 15, 1996, Satterfield was informed by the Department that his position had been "affected" by the takeover, and the Department offered him a different position. As a condition of Satterfield's employment with the Department, however, he was required to undergo psychological and physical examinations; and, pending the results of the examinations, he was placed on administrative leave without pay.

Satterfield's physical examination was performed by Bluhm. Under the contract between the Department and Occupatient, Occupatient's physicians perform physical examinations of the Department's employees "to determine whether an applicant or an existing employee is physically fit to perform the duties of their classification." J.A. at 361 (Contract between the Department and Occupatient). The contract first requires that Occupatient's physicians review the applicant's or employee's medical history form and

"certify by signing this document, that based on the information recorded, the individual is capable of meeting physical fitness requirements." J.A. at 361. The contract then requires that Occupatient's physicians perform certain tests, follow certain "Medical Examination Form Instructions," and complete a "Physical Demand Analysis Form." J.A. at 361; 339 (Physical Demand Analysis Form for Commercial Vehicle Enforcement Officers). On July 25, 1996, Bluhm sent the Department a report finding that "[i]n considering the recurrent nature of [Satterfield's] significant back disease as indicated by a review of the medical records, and the level of permanent disability that his orthopedic doctor feels he has, he would not be qualified physically for the position." J.A. at 353 (Bluhm Report).

On August 13, 1996, the Department sent Satterfield a letter explaining that although Satterfield had successfully completed his psychological examination, "[a]s you can see from the enclosed report, Dr. Bluhm stated that you do not medically qualify for the position of Commercial Vehicle Enforcement Officer. . . . In accordance with the [ADA], an employee must be able to perform all essential job functions with or without accommodations [and] [i]t is apparent that you cannot perform in the position of Commercial Vehicle Enforcement Officer." J.A. at 351 (8/13/96 Ltr. to Satterfield from the Department). The Department offered Satterfield three options: he could seek "a permanent ADA accommodation," he could inquire about disability retirement, or he could resign. J.A. at 351-52. Satterfield responded to this letter by sending the Department a report from his treating orthopedic surgeon, E. Brantley Burns, M.D., which asserted that "[Satterfield] currently does not seem disabled." J.A. at 197 (Burns Report). On September 17, 1996, the Department sent Satterfield another letter acknowledging receipt of the report from Burns but stating that the report "contradicts all earlier statements we received from physicians who treated you. Dr. Bluhm conducted her own examination as well as referring to these earlier statements in concluding that you could not perform the essential functions of this position." J.A. at 355 (9/17/96 Ltr. to Satterfield from

for the kind of discrimination Satterfield potentially suffered; however, such remedy should have been sought against the Department — not against Bluhm and Occupatient.

## C.  Negligence Per Se Claim

In its second memorandum opinion, the district court clarified that it had granted summary judgment to the defendants on Satterfield's state law claim of negligence per se in its first memorandum opinion and order. The court stated that "[t]he negligence *per se* claim cannot exist without proof of a statutory violation by Defendants," J.A. at 281; because the court had previously found that Bluhm and Occupatient could not have violated the ADA because they were not "covered entities" in relation to Satterfield, the court concluded that Satterfield could not claim negligence per se under state law on the ground that Bluhm and Occupatient violated the ADA.[9] Satterfield contends on appeal that his inability to sue Bluhm and Occupatient under the ADA should not preclude him from alleging their statutory violation of the ADA in a state law negligence per se claim.

This court has stated that "under Tennessee law the violation of a statute or regulation is negligence *per se* as to members of the class that the statute or regulation is intended to protect." *Wren v. Sullivan Elec., Inc.*, 797 F.2d 323, 325 (6th Cir. 1986). In arguing that he should be permitted to pursue his negligence per se claim in the state courts, Satterfield seems confused as to the district court's actual holding regarding his ADA claim. Satterfield seems to believe that the district court simply did not let him sue the defendants under the ADA; actually, however, the district court concluded, and we affirm, that Bluhm and Occupatient cannot have violated Satterfield's rights under the ADA because they are not "covered entities" for the purposes of the ADA in relation to Satterfield. In that Satterfield would need

---

[9]In his amended complaint in the state court, Satterfield based his negligence per se claim solely on the ground that the defendants violated the ADA.

not access his employment because the Department relied on Bluhm's finding that Satterfield was not qualified for the position. Even though the Department had a policy of relying on the results of physical examinations performed by Bluhm or other doctors at Occupatient, the Department itself actually controlled Satterfield's access to his employment at all times.[7] Therefore, we conclude that no reasonable jury could find that Bluhm and Occupatient were Satterfield's employers for the purposes of the ADA under the third theory of the employer-employee relationship.

Finally, we note that we have held that "[e]mployers do not escape their legal obligations under the ADA by contracting out certain hiring and personnel functions to third parties." *Holiday v. City of Chattanooga*, 206 F.3d 637, 645 (6th Cir. 2000). "The ADA expressly prohibits employers from 'participating in a contractual or other arrangement that has the effect of subjecting a covered entity's qualified applicant or employee . . . to discrimination.'" *Id.* (quoting 42 U.S.C. § 12112(b)(2)). In *Holiday*, we concluded that the City of Chattanooga could not rely on a doctor's "unsubstantiated and cursory medical opinion" in determining whether an employee was qualified for a job. *Id.* Inasmuch as Greene testified that he did not assess whether Satterfield could perform the essential functions of his job but simply relied on Bluhm's assessment, Satterfield would have been able to raise a similar claim to that made in *Holiday* were he able to sue the Department in federal court.[8] Therefore, there is a remedy

---

[7] One useful way to view this distinction is in terms of injunctive relief. In *Christopher*, the plaintiff's employers — the individual doctors — could not have granted the plaintiff access to the hospital. To obtain the injunctive relief necessary to access her employment, the plaintiff in *Christopher* had to sue the hospital. In this case, even if Bluhm were to revise her report, Bluhm could not force the Department to hire Satterfield.

[8] The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

---

the Department). The letter concluded: "The Department has not decided to terminate you based on your medical disability. However, considering the fifty percent . . . disability rating reflected in your records, the Department has no other option but to consider you resigned . . . for medical reasons." J.A. at 355.

On June 25, 1997, Satterfield filed suit in the United States District Court for the Eastern District of Tennessee against the State of Tennessee, the Department, Michael C. Greene ("Greene"), the Commissioner of the Department, in his individual and official capacity, Bluhm, and Occupatient. Satterfield alleged violations of his rights under the ADA, 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 *et seq.*, and various other claims under state law. While his claims were pending in federal court, Satterfield filed a separate action in the circuit court for Knox County, Tennessee against the State, the Department, and Greene, alleging violations of his rights under the ADA, the Rehabilitation Act, the THRA, and 42 U.S.C. § 1983. Satterfield initially voluntarily dismissed Bluhm and Occupatient as parties in the federal action. However, after the federal court dismissed Satterfield's federal claims against the State, the Department, and Greene, finding them barred under the Eleventh Amendment, and declined to exercise supplemental jurisdiction over Satterfield's state claims, Satterfield amended his complaint in the state court to add Bluhm and Occupatient as defendants and to allege additional claims against them under state law.

On May 29, 1998, Bluhm and Occupatient filed a notice of removal in the United States District Court for the Eastern District of Tennessee.[1] On March 24, 1999, Satterfield

---

[1] The notice of removal states that the State, the Department, and Greene joined in the removal. However, only Greene was involved in the removed action and then only in his individual capacity. Satterfield eventually stipulated pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii) that all his claims against Greene be dismissed with prejudice,

moved for partial summary judgment, and on April 6, 1999, Bluhm and Occupatient moved for summary judgment. On October 26, 1999, the district court issued a memorandum opinion and order denying Satterfield's motion for partial summary judgment and partially granting the defendants' motion for summary judgment. The court granted summary judgment to the defendants on Satterfield's federal ADA and Rehabilitation Act claims on the ground that Bluhm and Occupatient were not "covered entities" for the purposes of the ADA or the Rehabilitation Act, and, therefore, they could not have violated Satterfield's rights under those statutes. Declining then to exercise supplemental jurisdiction over Satterfield's state law claims against Bluhm and Occupatient, the court remanded the state law claims to the Circuit Court for Knox County, Tennessee. Following this order, Satterfield moved for clarification and revision of the court's order in regard to his state law claim of negligence per se. In a second memorandum opinion and order issued on March 6, 2000, the court clarified that it had previously dismissed Satterfield's state law negligence per se claim against Bluhm and Occupatient. Satterfield filed a timely notice of appeal of the district court's grant of summary judgment for Bluhm and Occupatient on his ADA claim and state law claim of negligence per se.

## II. ANALYSIS

### A. Standard of Review

This court reviews de novo a district court's order granting summary judgment. *Mulhall v. Ashcroft*, 287 F.3d 543, 550 (6th Cir. 2002). Under Federal Rule of Civil Procedure 56(c), we affirm a grant of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

and, therefore, Bluhm and Occupatient are the only defendants involved in this appeal.

recognize the existence of the theories because, under any of the theories, Satterfield cannot show that Bluhm and Occupatient were his employers for the purposes of the ADA. Bluhm and Occupatient did not originally have control over Satterfield's employment opportunities, nor did the Department delegate control over Satterfield's employment opportunities to Bluhm and Occupatient. As Satterfield notes, Greene testified in his deposition that it was his policy, as Commissioner of the Department, not to employ anyone who did not pass the physical examination. However, Greene also testified that he made the final decision in regard to Satterfield's employment with the Department. Therefore, we conclude that no reasonable jury could find that Bluhm and Occupatient were Satterfield's employers for the purposes of the ADA under either the first or second theory of the employer-employee relationship.

Satterfield's claim is arguably most compelling under the third theory of the employer-employee relationship. According to Satterfield, "there is no question, at least for summary judgment purposes, that Defendants Bluhm and Occupatient 'significantly affected access' of Officer Satterfield 'to employment opportunities.'" Appellant's Br. at 20. At first glance, it does seem as though Bluhm and Occupatient significantly affected Satterfield's access to employment with the Department. However, Satterfield's case and the plaintiff's case in *Christopher* can be easily distinguished in that the Department at all times retained control over Satterfield's *access* to his employment. In *Christopher*, as in *Sibley*, the plaintiff, a nurse employed privately by doctors at a hospital, could not access her employment because the hospital refused to grant her privileges. *See Christopher*, 936 F.2d at 871-74; *Sibley*, 488 F.2d 1338, 1339-40. In Satterfield's case, Satterfield could

this court interpreted the D.C. Circuit's opinion in *Sibley Memorial Hosp. v. Wilson*, 488 F.2d 1338 (D.C. Cir. 1973), the case we relied on in *Christopher*, to turn on the defendants' control over the plaintiffs' employment with third parties. *See Darks v. City of Cincinnati*, 745 F.2d 1040, 1042 (6th Cir. 1984).

lines of cases setting out three theories, which approximate the theories delineated in *Carparts*. First, we have stated in several cases that for the purposes of the ADA and other Civil Rights Acts, an employer/employee relationship is identified by considering: "the entire relationship, with the most important factor being the employer's ability to control job performance and employment opportunities of the aggrieved individual." *Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 319 (6th Cir. 2001) (quotation omitted); *see also Johnson v. City of Saline*, 151 F.3d 564, 568 (6th Cir. 1998) (same); *Simpson v. Ernst & Young*, 100 F.3d 436, 442 (6th Cir. 1996), *cert. denied*, 520 U.S. 1248 (1997) (same in the context of the ADEA and ERISA). Second, we have recognized that an agent of an employer may be identified as an employer for the purposes of the Civil Rights Acts if the employer delegated employment decisions to the agent. *See Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 996 (6th Cir. 1997); *York v. Tenn. Crushed Stone Ass'n*, 684 F.2d 360, 362 (6th Cir. 1982). Finally, as *Carparts* noted, we have stated that: "Title VII does not require a formal employment relationship between the plaintiff and the defendant. Rather, a plaintiff is protected if the defendant is one who significantly affects access of any individual to employment opportunities." *Christopher*, 936 F.2d at 875 (quotation omitted).

These three lines of cases do not seem to recognize one another; although, arguably, the later cases in this court stating the first theory consolidate all three theories under the "control" concept.[6] However, in this case, we need only

---

case]." *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 404 n.6 (6th Cir. 1997).

[6] The first and second theories, the employer control theory and the agency theory, seem to be essentially the same in this circuit. *See Swallows*, 128 F.3d at 996 (concluding that an entity was not an "agent" of an employer because it did not exercise control over the employment decisions); *see also Johnson*, 151 F.3d at 568 (stating that the employer-employee relationship is identified by applying common law principles of agency and the master-servant relationship). In addition, in a case decided prior to our decision in *Christopher*, in which we explain the third theory,

56(c). A dispute over a material fact cannot be "genuine" unless a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing the district court's decision to grant summary judgment, this court must view all evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## B. ADA Claim

Title I of the ADA generally prohibits certain employers from discriminating against disabled employees:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). A covered entity is defined as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). An employer is defined as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks or in the current or preceding calendar year, and any agent of such person . . . ." 42 U.S.C. § 12111(5)(A). Satterfield alleges that the defendants violated his rights under two provisions of Title I of the ADA. First, he argues that by sharing his medical history with the Department, the defendants did not treat his medical history as a confidential medical record, in violation of 42 U.S.C. § 12112(d)(3)(B).[2] Second, he argues

---

[2] 42 U.S.C. § 12112(d)(3) states that:
A covered entity may require a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties of such applicant, and may condition an offer of employment on the

that Bluhm's physical examination of him was neither job-related nor consistent with business necessity, in violation of 42 U.S.C. § 12112(d)(4)(A).[3]  As both provisions apply only to covered entities, however, Satterfield must show that Bluhm and Occupatient are covered entities for the purposes of the Act in order to show that they violated the Act.

Satterfield contends that "a private cause of action exists against Defendants Bluhm and Occupatient under the ADA because they acted as 'agents' of [his] employer," and that "Defendants Bluhm and Occupatient should be construed as 'agents' of the Department of Safety because they participated in a contractual agreement that violated the medical examination and confidentiality provisions of the ADA." Appellant's Br. at 1.[4]  In support of this contention, Satterfield cites a First Circuit case, *Carparts Distribution Ctr., Inc. v. Automotive Wholesaler's Ass'n of New England,*

---

results of such examination, if —
    (A) all entering employees are subjected to such an
        examination regardless of disability;
    (B) information obtained regarding the medical
        condition or history of the applicant is collected
        and maintained on separate forms and in separate
        medical files and is treated as a confidential
        medical record . . . .

[3] 42 U.S.C. § 12112(d)(4)(A) states that:
A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature and severity of the disability unless such examination or inquiry is shown to be job-related and consistent with business necessity.

[4] Although Satterfield uses the language of "private right of action," he is actually arguing that Bluhm and Occupatient are his "employers" under the ADA.  We have held that individuals who do not qualify as "employers" under Title I of the ADA may not be held personally liable in ADA cases. *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 807 n.1 (6th Cir. 1999), *cert. denied*, 530 U.S. 1262 (2000).  Thus, in order to obtain the relief in damages he seeks, Satterfield must argue that Bluhm and Occupatient were his employers.

*Inc.*, 37 F.3d 12 (1st Cir. 1994), which delineates three legal theories under which entities can be deemed employers for the purposes of the ADA.  The *Carparts* court explained that "[t]he issue before us is not whether defendants were employers of [the plaintiff] within the common sense of the word, but whether they can be considered 'employers' for purposes of Title I of the ADA and therefore subject to liability for discriminatorily denying employment benefits to [the plaintiff]." *Carparts*, 37 F.3d at 16.

The three legal theories identified in *Carparts* are as follows.  First, the court stated that "defendants would be 'employers' if they functioned as [the plaintiff's] 'employer' with respect to his employee health care coverage, that is, if they exercised significant control over an important aspect of his employment." *Carparts*, 37 F.3d at 17.  Second, the court explained that even if the defendants lacked control over an important aspect of an employee's employment, "defendants would still be rendered 'employers' of [the plaintiff] if defendants are 'agents' of a 'covered entity,' who act on behalf of the entity in the matter of providing and administering" an important aspect of employment.  *Id.* Finally, the court quoted our opinion in *Christopher v. Stouder Memorial Hosp.*, 936 F.2d 870, 875 (6th Cir.), *cert. denied*, 502 U.S. 1013 (1991), for the proposition that "a plaintiff is protected if the defendant is one who significantly affects access of any individual to employment opportunities." *Id.* at 18.

The district court determined that, even under the theories delineated in *Carparts*, Satterfield would not be able to show that Bluhm and Occupatient were his employers for the purposes of Title I of the ADA.  We agree.  Unlike the First Circuit in *Carparts*, this court has not comprehensively explained the legal theories by which to identify "employers" under the Civil Rights Acts.[5]  Instead, we appear to have three

---

[5] We have stated that "Title VII, the ADEA, and the ADA define 'employer' essentially the same way, [and therefore] an analysis based on Title VII, the ADEA, and the ADA case law is appropriate [in a Title VII