**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 11, 2018
Decided January 3, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 17-1979

| | |
|---|---|
| WILLIAM DITTMANN,<br>    *Plaintiff-Appellant*,<br><br>    *v.*<br><br>QUEST DIAGNOSTICS, INC.,<br>    *Defendant-Appellee*. | Appeal from the United States District<br>Court for the Northern District<br>of Indiana.<br><br>No. 2:16-cv-16-PPS-PRC<br><br>Philip P. Simon,<br>*Judge*. |

**O R D E R**

William Dittmann's employer assessed a $500 surcharge for his employee benefits because he refused to complete a health questionnaire and submit to a wellness screening. He sued Quest Diagnostics, which conducted the health screenings, under federal employment-discrimination laws. The district judge dismissed the claims against Quest on the ground that Quest was not his employer and thus its actions were not covered by the statutes. We affirm.

# I

Dittmann accepted a job in 2013 to work at ACS Human Services, a subsidiary of Xerox. Two years later, Xerox implemented a wellness program designed to encourage its employees to stop using tobacco. As part of the program, Xerox annually assessed each employee a "tobacco surcharge" of $500 for the employee's healthcare benefits. Xerox removed the surcharge for employees who completed an online questionnaire and wellness screening showing that they were tobacco-free. Employees could complete these screenings at a Quest Patient Service Center, certain Xerox locations, or at their personal doctor's office. The online questionnaire was available through Quest's online portal.

Because of privacy concerns, Dittmann refused to complete the medical screening or questionnaire. As a result, he remained obligated to pay the $500 surcharge. Angered, he sued Quest, Xerox, and ACS under laws that regulate employers: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Genetic Information Nondiscrimination Act of 2008, *id.* § 2000ff *et seq.*, the Americans with Disabilities Act of 1967, *id.* § 12101 *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* He also brought claims of defamation and invasion of privacy under Indiana state law.

The district court dismissed the suit. First, it granted Xerox's and ACS's motion to compel arbitration. When Dittmann joined ACS and Xerox in 2013, he agreed to submit any disputes arising out of his employment with Xerox to arbitration. The district court concluded that the claims against Xerox and ACS fell within the scope of this agreement and dismissed them. (Dittmann does not contest this order on appeal.) As for the claims against Quest, the court explained that they failed because Dittmann had not pleaded that Quest was his employer or an agent of Xerox. But the court granted Dittmann a final opportunity to replead his claims against Quest.

Dittmann's amended complaint fared no better. The court explained that the exhibits attached to the amended complaint refuted Dittmann's assertion that Quest controlled his benefits and was therefore an agent of Xerox. The attachments showed that "all Quest did" was provide wellness screenings and collect medical information. Concluding that Dittmann therefore could not assert any federal employment-related claim against Quest, the judge dismissed the federal claims and declined to exercise supplemental jurisdiction over the state-law claims.

# II

On appeal, Dittmann argues that he adequately alleged that he was Quest's employee. His only reason for taking this position is his theory that Quest "controlled"

part of his pay as Xerox's agent. Under each statute that Dittmann invokes, an "employee" is defined as "an individual employed by any employer." 42 U.S.C. § 2000e(f); *id.* § 2000ff(2)(A); *id.* § 12111(4); 29 U.S.C. § 630(f). An "employer" is "a person engaged in an industry affecting commerce" and "any agent of such a person." 42 U.S.C. § 2000e(b); *id.* § 2000ff(B)(i); *id.* § 12111(5)(A); 29 U.S.C. § 630(b). When these definitions are not adequate, courts presume that "Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322–23 (1992) (quoting *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 739–40 (1989)). And in applying agency doctrine, we look primarily to whether an entity has sufficient "control" over a particular worker. See *Frey v. Coleman*, 903 F.3d 671, 676 (7th Cir. 2018).

Dittmann has pleaded himself out of court on his contention that Quest controlled part of his pay and therefore employed him. Like the district court, we may examine the documents that Dittmann has attached to his complaint and invited this court to review. See *Williamson v. Curran*, 714 F.3d 432, 435–36 (7th Cir. 2013). These attachments state that Xerox alone implemented and assessed the tobacco surcharge. Thus Xerox, not Quest, controlled this aspect of his pay. Dittmann responds that Quest provided Xerox with "healthcare information that affected his wages." That may be true, but that does not make Quest a controller of his wages. As we observed in *Chapman v. Yellow Cab Cooperative*, 875 F.3d 846, 848 (7th Cir. 2017), "[m]any decisions … hold that one does not become an "employee" of an entity … just because that entity's decisions may have some effect on income." Xerox decided what to do with Quest's information. Xerox, therefore, controlled his wages. See *Satterfield v. Tenn.*, 295 F.3d 611, 618 (6th Cir. 2002) (doctors who contracted with employer to examine employees and their medical records were not "covered entities" under the Americans with Disabilities Act because they did not dictate the employment opportunities resulting from those evaluations).

Dittmann contends, incorrectly, that *Alam v. Miller*, 709 F.3d 662, 669 (7th Cir. 2013) mandates a different result. *Alam* relied on Title VII's provision defining an employer to include "any agent" of the employer. *Id.* (quoting 42 U.S.C. § 2000e(b)). But it also warned that "plaintiffs may maintain a suit directly against an entity acting as the agent of an employer…*only under certain circumstances.*" 709 F.3d at 669 (emphasis added). Such circumstances may be present where an agent "exercises control over an important aspect of [the plaintiff's] employment" or where "an employer delegates sufficient control of some traditional rights over employees to a third party." *Id.* (quoting *Carparts Distribution Center, Inc. v. Automotive Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 17 (1st Cir. 1994); *Spirt v. Teachers Ins. & Annuity Ass'n*, 691 F. 2d 1054,

1063 (2d Cir. 1982), *vacated and remanded on other grounds*, 463 U.S. 1223 (1983)). These circumstances are absent here. Although Quest gave information to Xerox, Quest did not "control" Dittmann's benefits. Dittmann himself admits that Xerox determined what to do with that information. Thus, even under *Alam*, Dittmann faces the same problem as before: he has alleged that Quest affected his wages by supplying information that Xerox used to set his pay. This is not the type of "control" that creates an employment relationship under the federal employment-discrimination laws.

Because Dittmann's complaint conclusively shows that Quest is not his employer, we affirm the judgment of the district court dismissing his case.