Grace IDUSUYI, Plaintiff–Appellant,

v.

State of TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES, Defendant–Appellee.

No. 00–6324.

United States Court of Appeals, Sixth Circuit.

Feb. 11, 2002.

Before KENNEDY and DAUGHTREY, Circuit Judges; BELL, District Judge.*

KENNEDY, Circuit Judge.

Plaintiff Grace Idusuyi appeals the district court's judgment as a matter of law in this sexual harassment case. Idusuyi, an employee of the Tennessee Department of Children's Services ("DCS") at Woodland Hills, a secure juvenile correctional facility, applied for a higher-ranking position as director of the Nashville Transition Center, a different Department facility. After twice interviewing the Plaintiff, Albert Dawson, the DCS employee in charge of the search, contacted the highest ranking employee at Woodland Hills, Ken Currie, for an employment reference. Plaintiff did not receive the promotion.

Plaintiff filed a complaint in the United States district court charging quid pro quo and hostile environment sexual harass-

* The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

ment, claiming that she was denied the promotion because of a negative reference from Currie. Idusuyi alleged that Currie gave her a negative reference because she refused to succumb to sexual advances he made from 1997 to 1998. The case was tried before a jury in August, 2000. At the close of Plaintiff's proof, Defendant made a motion for judgment as a matter of law under Fed. R. Civ. Pro. 50. The district judge reserved ruling on the motion until DCS had presented its defense. After the presentation of its case, DCS renewed its motion for judgment as a matter of law. The district court granted the motion. The court found that the Plaintiff had not demonstrated a tangible job detriment. Furthermore, the court found that DCS had a policy in place for the prevention of sexual harassment of which plaintiff unreasonably failed to take advantage, entitling DCS to a complete affirmative defense on her hostile environment sexual harassment claim under *Burlington Industries v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

We review Rule 50 motions under "the same standard that the district court uses." *Hurt v. Coyne Cylinder Co.*, 956 F.2d 1319 (6th Cir.1992). We review de novo whether "during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. Pro. 50(a)(1); *Nida v. Plant Protection Ass'n Nat.*, 7 F.3d 522, 525 (6th Cir.1993). Applying this standard, we find no evidentiary basis to support Plaintiff's claim that she suffered a tangible job detriment as well as no basis to conclude that DCS lacked a preventative policy or that plaintiff took reasonable steps under the policy to alleviate her alleged harassment. No reasonable juror could have found for the

Plaintiff given her failure to contradict the facts underlying DCS's affirmative defenses. Therefore, we affirm the District Court's judgment.

## I. FACTS & ANALYSIS

 In *Faragher* and *Ellerth*, two decisions released on the same day, the Supreme Court clarified when an employer would be held liable for sexual harassment committed by a supervisor. The Court suggested the distinction between "quid pro quo" and "hostile environment" sexual harassment was of limited utility, and redrew the test for vicarious liability. *Ellerth*, 524 U.S. at 752, 118 S.Ct. 2257. On the one hand, where a supervisor effects a "tangible job detriment" against an employee under his or her authority, the employer would be liable. Even where the supervisor harasses an employee, but takes no tangible action against him or her, "the employer is still liable [for hostile environment sexual harassment] unless the employer affirmatively shows that it 'exercised reasonable care to prevent and correct promptly any sexually harassing behavior,' and that the plaintiff 'unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.'" *E.E.O.C. v. Harbert–Yeargin*, 266 F.3d 498 (6th Cir.2001) (quoting *Ellerth* and *Faragher*).

Plaintiff presents a lengthy history of her relationship with Currie. If her version of the story is true, Currie certainly behaved inappropriately. However, under *Faragher* and *Ellerth*, our review of this appeal depends upon the facts proved at trial surrounding two issues. First, what facts were proved to suggest Plaintiff suffered a tangible job detriment because of Currie's harassment? Second, what facts were proved regarding DCS's sexual

harassment policy and Plaintiff's efforts to avail herself of remedies provided by that policy?

## A. TANGIBLE JOB DETRIMENT

■ An employer is liable for the sexual harassment of a supervisor against an employee under the supervisor's authority when the supervisor causes the harassed employee to experience a tangible job detriment, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth,* 524 U.S. at 761, 118 S.Ct. 2257. This is the case whether or not the employer has an anti-harassment policy in place. The problem Idusuyi faces in demonstrating a tangible job detriment is that the individual responsible for her harassment, Currie, had no formal role in determining whether or not she would receive the position as the director of the Nashville Transition Center.

Plaintiff claims that Currie's negative recommendation of her led directly to her failure to receive the director position. Br. at 33. Plaintiff applied for the position in response to a letter she received from Dawson after her name appeared on a civil service register (a list of candidates who had expressed interest in positions of that type with the Department of Personnel and had the minimum qualifications for the position). App. at 200–03. Plaintiff does not claim that Dawson discriminated against her because of her sex or that he had any knowledge of Currie's conduct. Her claim is that Currie's recommendation to Dawson was responsible for her failure to obtain the promotion. The only evidence she relies on is the testimony of Dawson, who coordinated the search for the Transition Center's director.

Dawson testified that when he called Currie for a reference, Currie provided two pieces of information regarding the Plaintiff. First, that plaintiff had videotaped students, and second, that Plaintiff had brought her child to the Woodland Hills campus (both apparent violations of DCS policies). Dawson testified that the information provided by Currie was "critical" and "paramount" in his decision not to hire Plaintiff. App. at 212. Dawson testified that he "viewed the two incidents as very serious, especially in a secure facility where you have to constantly be aware of security and confidentiality . . . ." App. at 209.

■ Plaintiff argues that "Currie's motive in giving a bad reference . . . was to punish her for refusing his sexual advances . . . ." Br. at 38. Motive, however, does not prove that Currie's sexual harassment prevented her from receiving the position. In the context of racial discrimination, we have previously held that discriminatory animus on the part of a supervisor cannot be imputed to the supervisor's supervisor, but that plaintiffs had to show evidence that discriminatory motives influenced "the ultimate decision-makers." *Wilson v. Stroh, Co.,* 952 F.2d 942, 946 (6th Cir. 1992). In *Wilson,* we also held that a discriminatory supervisor "br[inging] an employee's] misconduct to [an ultimate decision-maker's] attention, without more, is insufficient to support a prima facie case." *Id.* In *Stroh's,* we held that were a plaintiff to introduce evidence proving that a supervisor did not report identical misconduct by white employees, then a prima facie case of discrimination would be proved. We think that the same rule should apply in a sexual harassment context. Plaintiff has failed to introduce evidence that employees Currie was not allegedly harassing committed the same acts and yet received positive references.

Moreover, whatever Currie's own reason for relating the incidents, and whether or

not his reference neglected to present a contextual view of Plaintiff as a good employee (Currie recalls his reference as otherwise a positive one and Dawson testified that Currie said Plaintiff was good with children), the incidents did in fact occur. Dawson's failure to do further investigation of these incidents (which might have led him to conclude, as plaintiff argues, that Currie misrepresented the seriousness of the behavior) bears no relation to Currie's sexual harassment.

Dawson decided not to offer the position to Plaintiff, not because of Currie's motives, but because of his own interpretation of what the two incidents said about Plaintiff's capacity to exercise the discretion, leadership and responsibility the promotion would involve. Dawson testified that he had been concerned about her lack of administrative experience even before contacting Currie. App. at 204. While Plaintiff's first interview (with Dawson) went well, her second (with Dawson, his supervisor, and his assistant) did not go as well. App. at 205. Thus there is the question of whether she would have been hired even if Dawson had not learned of those incidents. Once he heard of the two incidents, Dawson resolved not to continue exploring Plaintiff's candidacy. Plaintiff claims that videotaping students was not actually against department policy (and that she was asked to do so by her supervisor at Woodland Hills). Dawson's testimony, however, makes clear that he was not concerned that plaintiff violated policy, but rather that she acted without the discretion one would expect of the director of a Department facility. He was concerned that video taping infringed the confidentiality rights of the children and breached their rights to privacy.

Currie lacked the direct responsibility over whether or not the plaintiff received the promotion. Idusuyi cites *Hernandez–Loring v. Universidad Metro.*, 233 F.3d 49 (1st Cir.2000), in which a plaintiff won a vicarious sexual harassment case in which the supervisor who had harassed her was not single-handedly responsible for her promotion, but instead chaired a five-member committee which was responsible for making tenure decisions. "The gist of Hernandez–Loring's quid pro quo claim is that Diaz–Rivera made advances to her, was rebuffed, and then used his position as head of the committee to revenge himself by blocking her promotion." *Id.* at 52. Plaintiff suggests that case should lead to a finding for her, since the supervisor was not, on his own, empowered to deny Hernandez–Loring the position. However, unlike Diaz–Rivera, who had the power to vote on tenure candidates and significant opportunity to use his position as chair of the committee to control the discussion, Currie had *no* vote on whether or not Plaintiff was promoted, and only spoke to Dawson for a few minutes. In this case, Dawson exercised his own independent judgment, and, in part in response to hearing true incidents related by Currie, declined to pursue Plaintiff's candidacy.

Plaintiff also relies upon a Seventh Circuit decision, *Molnar v. Booth*, 229 F.3d 559, 600 (7th Cir.2000) for the proposition that a negative evaluation can provide the basis for a "tangible job detriment." *Molnar* involved significantly different circumstances. Molnar was a teaching intern, who was harassed by Booth, the school principal. Since Booth's signature and positive evaluation were required (though not sufficient) for Molnar's licensing, the principal's negative evaluation (which barred her from receiving a license)—coupled with his decision to remove art supplies from her control—constituted a tangible job detriment. Even then, it was a "close call." *Id.*

If a superior who has made sexual advances is not part of the chain of command that evaluates and determines whether a candidate receives a promotion, that superior's transmission of truthful if unflattering information does not constitute a tangible job detriment. We agree with the district court that Plaintiff has failed to prove a tangible job detriment. No reasonable jury could have found otherwise, and therefore judgment as a matter of law was appropriate.

## B. DCS'S POLICY AGAINST SEXUAL HARASSMENT

■ To succeed in an affirmative defense against a vicarious sexual harassment claim for a hostile environment, a defendant must show by a preponderance of the evidence that it exercised reasonable care in implementing a policy to prevent and correct sexual harassment and that the plaintiff unreasonably failed to take advantage of that policy. *Faragher*, 524 U.S. at 806–807, 118 S.Ct. 2275. This defense is not available where the harassment culminated in a tangible employment action; however, the district court found no such action in Idusuyi's case and we affirm that finding. Therefore, DCS's policy on harassment and Idusuyi's use of the mechanisms provided for in that policy become relevant. The district court held that DCS was entitled to judgment as a matter of law on its affirmative defense that it had a policy aimed at combating sexual harassment of which plaintiff failed to avail herself. We agree.

■ DCS demonstrated that it had a reasonable policy regarding workplace sexual harassment. It had a written policy which stated its zero-tolerance approach to sexual harassment. App. at 242–244. This policy was disseminated on a computer server, sent to employees by e-mail, App. at 241, and was posted at job sites (including Woodland Hills). App. at 179. A multi-level grievance procedure was in place within DCS to allow employees to seek a remedy for harassment. In-service training included components on sexual harassment. App. at 329. The Plaintiff attended one such course, which included a two-hour segment on sexual harassment and the DCS policy towards it. App. at 186–193; *Id.* Plaintiff maintains that she never saw the sexual harassment policy, though she admits she knew one existed. App. at 119–120. We agree with the District Court that "reasonableness" does not require that every single employee know the intricacies of the policy. The DCS went to more than reasonable lengths to prevent and provide remedies for sexual harassment in its workplaces.

The Plaintiff, on the other hand, demonstrated an unreasonable failure to pursue a remedy through DCS's policy. She did not mention to a single co-worker that she had been harassed until after she had left Woodland Hills and the Nashville Transition Center position had been given to another candidate (after the compilation of a second civil service register). Though she admits she knew DCS had a sexual harassment policy, Plaintiff justifies her silence by claiming that she thought complaints would be futile because of Currie's relationship with DCS leaders. A similar claim was rejected by a district court in New York in a case concerning ethnic origin harassment. *See Fierro v. Saks Fifth Ave.*, 13 F.Supp.2d 481 (S.D.N.Y. 1998). In *Fierro*, the employer argued the plaintiff failed to take advantage of an employer's complaint procedure because of his "belief that management would not look favorably on a person who filed such complaints." *Id.* at 492. The District Court held that such an assertion did not create an issue of material fact and granted a motion for judgment as a matter of

law. *Id.* We agree that it is unreasonable for employees to pass their own judgments—absent any supporting facts—about how effectively an employer's sexual harassment policies operate. The plaintiff knew of the existence of a sexual harassment policy, and her failure to pursue a remedy under that policy was unreasonable.

For the foregoing reasons, we affirm.