**Travis WALKER, Plaintiff–Appellant,**

v.

**NATIONAL REVENUE CORPORATION; Deluxe Corporation; Mary Quinones, Defendants–Appellees.**

No. 00–4531.

United States Court of Appeals, Sixth Circuit.

Aug. 1, 2002.

Before BATCHELDER and CLAY, Circuit Judges;  CARR\*, District Judge.

BATCHELDER, Circuit Judge.

The plaintiff, Travis Walker, appeals the grant of summary judgment in favor of the defendants on his claims of hostile work environment sexual harassment and retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq.*  We conclude that Walker has failed to present evidence sufficient to

---

\* The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

support a jury finding that the conduct complained of, while unpleasant and perhaps cruel, was severe or pervasive conduct directed against him by his supervisor because of his sex, or that he suffered a job detriment or was denied a job benefit because of his sex. Further, Walker has not provided evidence from which a reasonable jury could find that his employer or any supervisors retaliated against him for engaging in protected conduct. We therefore affirm the judgment of the district court.

## BACKGROUND

National Revenue Corporation ("NRC") is a debt collection agency headquartered in Columbus, Ohio, which was purchased by Deluxe Corporation in 1994. Walker's employment with NRC began on November 11, 1996, in Gahanna, Ohio, but in 1997, he was transferred to the Columbus office to work as a claims collector under the supervision of Mary Quinones.

Walker alleges that during his first two weeks in Columbus, Quinones repeatedly engaged in inappropriate behavior. For example, she sat next to him and rubbed his legs, thighs, neck, and hair, and positioned herself in a manner that revealed her underwear. In his deposition, Walker testified that he could not recall Quinones making any comments that were sexual in nature, but he did inform her that he was gay and not romantically interested. However, Walker later submitted an affidavit attached to his memorandum opposing the defendants' motion for summary judgment in which he contended that she told him she could change him and explained sex acts she had engaged in with other men [1].

Walker maintains that Quinones abused him physically and verbally after he rejected her advances. Examples of this abuse include throwing paper at him, snapping his headset against his ear, threatening to send him home from work, and threatening to hit him with a plastic wiffle ball bat. Walker admits that Quinones, nicknamed "Military Mary," screamed at and threatened all of her subordinates on a regular basis and that NRC Director of Operations John Masterson was forced to hold an employee meeting in early 1997 because of the number of complaints he received from both male and female employees regarding Quinones. She was subsequently presented with a plan to modify her behavior.

Because of Quinones treatment of him, Walker requested a transfer to a different division in June 1997, but he was refused because intense outside competition required NRC to minimize employee movement. NRC did offer him an alternative—an opportunity to work under Ken Thompson—which Walker rejected because even though Thompson assured him to the contrary, he feared that Thompson's Baptist faith would result in strong opposition to his gay lifestyle.

Walker's situation under Quinones worsened, causing him stomach pain, anxiety attacks, and depression, which he claims resulted in an uncontrollable bout of diarrhea during which he soiled his clothes. When Walker asked Quinones if he could go home and change his clothes, she refused his request and forced him to remain at work. He complained to NRC's Human Resource Administrator, Annette DeLong, the following day, and three days later, on August 17, 1997, he was granted a transfer, although others who requested transfers were denied. Walker was scheduled

---

1. Walker cannot create a factual issue by filing an affidavit contradicting his earlier deposition testimony after a motion for summary judgment has been made; we must therefore disregard it. *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 549 (6th Cir.2000).

to begin work on September 1, 1997, in the secondary contingent recovery division (SCRD), but he claims that on August 21, 1997, Quinones discovered that he had been transferred and vowed to fire him before the transfer took effect, so Delong and NRC's counsel transferred him immediately and arranged for him to take vacation time until September 1. Walker asserts that Quinones continued to stalk him after the transfer by entering his work area to use the copier and fax machines, although she had them available in her space, and glaring at him and walking unnecessarily close to him.

Walker filed an EEOC charge on October 20, 1997, alleging sexual harassment and retaliation; on February 8, 1998, the EEOC issued a right-to-sue letter. He filed the present action on May 9, 1998, but he continued to work in the SCRD and had much success there—he exceeded his production level, thus doubling his income despite a drop in his hourly wage. Despite this success, Walker took a leave of absence in January 1999 due to stomach, anxiety, and depression problems. His new supervisor permitted other SCRD employees to attempt collection on approximately twenty of his four hundred accounts during his absence. Walker returned on February 1, 1999, and discovered that he did not receive payment on at least one account that had been paid during his absence. Walker was told by two supervisors that he had not earned the bonus because he had not been the employee responsible for procuring payment on the account. Upset, Walker left without making any effort to resolve the issue pursuant to company policy and officially resigned the next day, to his supervisors' astonishment; according to Walker, their "mouths dropped" when he told them.

Walker continued to pursue this suit, alleging hostile work environment sexual harassment and retaliatory employment discrimination in violation of Title VII and a state law claim of negligent and intentional infliction of emotional distress, to which the defendants filed a motion for summary judgment. The district court granted summary judgment, dismissing his federal claims with prejudice and declining to exercise supplemental jurisdiction over his state claim.

## ANALYSIS

### A. Standard of Review

We review a district court's grant of summary judgment de novo. *Williams v. Mehra,* 186 F.3d 685, 689 (6th Cir.1999) (en banc). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). When we review a motion for summary judgment, we view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To withstand summary judgment, the non-movant must present sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank,* 916 F.2d 337, 342 (6th Cir.1990).

### B. Hostile Work Environment Sexual Harassment

There is no question that an employer may be held liable for the discriminatory behavior of a supervisor. *Faragher v. City of Boca Raton,* 524 U.S. 775, 787–92, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). And *Faragher* made it clear that in order for a sexually hostile environment to be action-

able, it must be "so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment." *Id.* at 786 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)) (internal quotation marks omitted). Further, the Court said, "We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." *Id.* at 788. We determine whether conduct is severe or pervasive by examining all of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance. *Id.* at 787–88. Offhand comments and isolated incidents do not amount to discriminatory changes in the terms and conditions of employment. *Id.* at 788.

■ Walker has failed to present evidence sufficient to permit a jury to find that the conduct complained of was severe or pervasive, that he suffered a job detriment or was denied a job benefit, and that any of the alleged actions taken by Quinones were because of his sex. There is no question that Walker has presented evidence that Quinones was the type of supervisor for whom no employee wanted to work, that she acted in a juvenile and irrational manner on occasion, and that she was at best inconsiderate and at worst cruel in her treatment of those individuals under her supervision. However, Walker has not provided any evidence that Quinones's actions were motivated by gender; indeed, he presented evidence that Quinones treated every employee badly, male and female alike.

Moreover, Walker does not claim that he was denied any job benefit, and the job detriment of which he complains was the very transfer that he requested to distance himself from Quinones, and which resulted in significantly greater pay. We agree that the conduct of Quinones would have been unpleasant to tolerate, but we find that it was neither severe nor persuasive under the standards set out in *Faragher*. After the first two weeks, during which Quinones allegedly touched Walker uninvitedly and positioned herself inappropriately, such conduct did not recur, and when Walker refused her advances, she did not continue to make them. Further, there is no evidence suggesting that the harassment was severe, that Quinones physically threatened or humiliated Walker—her conduct was merely even-handedly offensive—or that his work performance was negatively affected by the harassment. These actions were not egregious enough to alter the conditions of Walker's employment. Thus, we hold that Walker wholly fails to provide evidence establishing a prima facie case of the kind of sexual harassment Title VII prohibits.

## C. Retaliatory Employment Discrimination

Walker also does not provide evidence from which a reasonable jury could find that his employer or any supervisors retaliated against him for engaging in protected conduct. Walker claims first that he was transferred to the SCRD after attempting to work under Quinones's supervision for several months; and second, that he was forced to resign when, on his return from a three-week leave of absence for health reasons, he learned that perhaps as many as twenty of his four hundred accounts had been given to co-workers for collection, and, on at least one of those accounts—only one was ever specified by Walker—he did not collect the bonus payable when the account was paid by the debtor.

To establish a prima facie case of retaliation under Title VII, the plaintiff must show that (1) he was engaged in protected activity; (2) the defendant knew of the activity; (3) he suffered an adverse employment action subsequent to or contemporaneous with the protected activity; and (4) there is a causal link between the protected activity and the adverse employment action. *Wade v. Knoxville Util. Bd.*, 259 F.3d 452, 463 (6th Cir.2001). An adverse employment action is a material change in the terms of employment, which must be more than a mere inconvenience or alteration in job responsibilities and does not include reassignments without salary or work hour changes. *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 885–86 (6th Cir.1996). In the constructive discharge context, a transfer at no loss of title, pay, or benefits does not constitute an adverse employment action. *Id.* at 886. To establish a constructive discharge, the plaintiff must show that his working conditions were so difficult or unpleasant that a reasonable person in his situation would have felt compelled to resign, *id.* at 887, and that the impact of the employer's conduct on the employee was reasonably foreseeable, *Yates v. Avco Corp.*, 819 F.2d 630, 637 (6th Cir.1987).

■ Walker has presented no evidence demonstrating that he suffered an adverse employment action. He requested the transfer to the SCRD, and it is undisputed that his income increased as a result of the transfer. Moreover, there is no evidence that the transfer was made for any reason other than the granting of his request; it was intended to respond to and resolve Walker's problems with Quinones. Indeed, Walker's own testimony indicates that others who tried to obtain similar transfers were not so lucky. Walker has not provided evidence from which a jury could find that he suffered an adverse employment action and thus has failed to make his prima facie case of retaliation.

■ Further, Walker also has not offered any evidence showing that he was constructively discharged. His own testimony makes it clear that, even if the transferring of some of his accounts to other employees rather than letting these accounts simply sit without any effort to collect them while he was on leave could be construed as retaliatory, which we believe it cannot, he made no effort to resolve his objection to the company's failure to pay him the bonuses he believed were due him on those accounts. By his own testimony, Walker established the fact that he came back to work, discovered that he had not been paid the bonus on one of those accounts, unsuccessfully approached two supervisors on the subject, and quit. He made no effort to follow NRC's procedures to resolve the problem. It is clear in this circuit that to establish constructive discharge, Walker had to present evidence from which a jury could find that his quitting was a foreseeable and intended result of the company's action in reassigning some of his accounts during his absence and not paying him bonuses on those accounts. *Yates*, 819 F.2d at 637. Walker's testimony demonstrates that his response was anything but foreseeable—his supervisors were astonished when he quit as evidenced by his testimony that their "mouths dropped." Accordingly, he has not proven constructive discharge.

■ Finally, we hold that the district court correctly determined that Walker's claim that the company retaliated against him by permitting Quinones to use the copy and fax machines in the SCRD after his transfer there, which gave Quinones the opportunity to glare at him, is simply not sufficient to state a claim of retaliation.

## CONCLUSION

For the foregoing reasons, we hold that the plaintiff failed to establish claims of hostile work environment sexual harassment and retaliatory employment discrimination. Accordingly, we affirm the judgment of the district court.