**Jennifer L. HOSCHAK, Plaintiff,**

v.

**DEFIANCE COUNTY ENGINEERS, et al., Defendants.**

**No. 3:00 CV 7770.**

United States District Court, N.D. Ohio, Western Division.

Sept. 11, 2002.

Lauryn M. Yelsky, Leonard W. Yelsky, Yelsky & Lonardo, Cleveland, OH, for Jennifer L. Hoschak.

Michael M. Heimlich, Delaware, OH, for Mark A. Diller.

Donald E. Theis, Baran, Piper, Tarkowsky, Fitzgerald & Theis, Toledo, OH, for Defiance County Engineers, Gaylon L. Davis and Steven Graf.

## MEMORANDUM OPINION

KATZ, District Judge.

Pending before this Court are: (1) Defendant Mark Diller's Motion for Summary Judgment (Doc. No. 40); (2) Defendant Defiance County Engineers ("DCE"), Gaylon Davis, and Steven Graf's Motion for Summary Judgment (Doc. No. 43); and (3) DCE, Davis, and Graf's Motion to Strike (Doc. No. 47). Based upon the parties' motions, oppositions, and replies and the entire record herein, the Court will deny the motion to strike as moot, grant in part and deny in part summary judgment to DCE, and grant summary judgment to Diller, Davis and Graf.

## I. BACKGROUND

Plaintiff Jennifer Hoschak began employment with Defendant Defiance County Engineers ("DCE") Office as a temporary employee in October 1999. Hoschak became a permanent employee in February 2000, but quit in July 2000. Plaintiff asserts that she left her job due to alleged sexual harassment on the part of Defendant Mark Diller ("Diller"), Plaintiff's supervisor at the Defiance County Garage. Plaintiff asserts that Defendant Gaylon Davis ("Davis"), supervisor of Defendants Diller and Graf, was aware of, but did nothing to prevent the harassment. Plaintiff further contends that after she filed an internal grievance, Defendant Steven Graf ("Graf") took various adverse actions against her, resulting in the filing of a retaliation charge.

In July 2000, Plaintiff filed a discrimination complaint with the Ohio Civil Rights Commission ("OCRC") and the appropriate Equal Employment Opportunity ("EEO") office and received a right to sue letter dated October 26, 2000 regarding her discrimination and retaliation claims.[1] Plaintiff subsequently filed suit in this court, asserting jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, alleging sexual harassment, hostile work environment, retaliation, and negligent/intentional infliction of emotional distress. Defendants have moved for summary judgment on all counts. Certain Defendant have also filed a motion to strike Plaintiff's affidavit and an attachment thereto.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323–25, 106 S.Ct. 2548. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*quoting* FED.R.CIV.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also Harris v. General Motors Corp.,* 201 F.3d 800, 802 (6th Cir.2000). Summary judgment must be entered "against a party

---

1. The right to sue letter is absent from the record. However, Defendants do not dispute that Plaintiff has filed charges and received the appropriate right to sue letter that is a predicate to this Court's jurisdiction.

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap,* 154 F.Supp.2d 1069, 1071 (E.D.Mich.2001) (citing *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987)). However, " 'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,' " *Wiley v. U.S.,* 20 F.3d 222, 227 (6th Cir.1994) (quoting *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505); therefore, "[t]he Court is not required or permitted ... to judge the evidence or make findings of fact." *Williams,* 154 F.Supp.2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.,* 130 F.Supp.2d 928, 930 (S.D.Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505; *see also Atchley v. RK Co.,* 224 F.3d 537, 539 (6th Cir.2000).

### B. Title VII

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

■ To prevail on an employment discrimination claim, a plaintiff must either provide direct evidence of discrimination or establish a prima facie case of discrimination pursuant to the burden-shifting paradigm of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). *See Sullivan v. River Valley Sch. Dist.,* 197 F.3d 804, 810 (6th Cir.1999) (stating "[i]n the absence of direct evidence of disability discrimination, a plaintiff may seek to establish a prima facie case of discrimination"); *Monette v. Elec. Data Sys. Corp.,* 90 F.3d 1173, 1178 (6th Cir.1996). In the instant action, Plaintiff presents no direct evidence of discrimination, and Defendants deny any discriminatory conduct with respect to the terms and conditions of Plaintiff's employment. Accordingly, the analysis proceeds pursuant to the *McDonnell Douglas* paradigm.

■ To establish a prima facie case of discrimination, a plaintiff generally must show, by a preponderance of the evidence: (1) membership in the protected class; (2) an adverse employment action; (3) that she was qualified for the position; and (4) that she "was replaced by someone outside the protected class or was treated differently from similarly situated members of the unprotected class." *Warfield v. Lebanon Correctional Inst.,* 181 F.3d 723, 728–29 (6th Cir.1999). However, the precise elements that a plaintiff must demonstrate to establish a prima facie case of discrimination will vary depending on the nature of the claim.

■ If a plaintiff succeeds in making out a prima facie case of discrimination, then the defendant must produce a legitimate, nondiscriminatory reason for its action. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (iterating the Court's "allocation of the burden of production and

an order for the presentation of proof in Title VII" discrimination cases). While a "defendant need not persuade the court that it was actually motivated by the proffered reasons," *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), it must nonetheless "clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Id.* at 255, 101 S.Ct. 1089.

If the defendant meets this burden of production, then the plaintiff must persuade the court that the proffered reason for the employment action is pretext. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 (6th Cir.2000). Once the burden has shifted, the plaintiff is given "a full and fair opportunity to demonstrate pretext." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089; *see also St. Mary's*, 509 U.S. at 507–08, 113 S.Ct. 2742. A plaintiff may demonstrate that the defendant's proffered explanation is pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089. Three ways in which a plaintiff can establish that defendant's reasons are not credible are: (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the employment decision, or (3) if they were factors, by showing that they were jointly insufficient to motivate the employment decision. *Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police*, 91 F.3d 836, 844 (6th Cir.1996); *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 848 (6th Cir.

1995); *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 266 (6th Cir.1986). A court "may not, however, focus on the soundness of an employer's business judgment." *Chappell*, 803 F.2d at 266.

### C. Title VII claims against Davis, Diller, and Graf

As a preliminary matter, the Court notes that in her opposition Plaintiff characterizes Count III as alleged pursuant to Ohio law, but does not similarly characterize Counts I or II. Plaintiff does not allege in her Complaint any Ohio Code provisions, or Ohio law in general, as a jurisdictional basis for Counts I–III, nor has she invoked this Court's supplemental jurisdiction for any of her claims. Discovery has closed, and this appears to be the first instance in which Plaintiff raises a potential discrimination claim predicated on Ohio law.[2] Accordingly, the Court construes Count III as alleged pursuant only to Title VII.

The Court further notes that Plaintiff has expressly alleged "Defendants [Davis, Diller, and Graf] are named in their capacity as employees of [DCE], *and not individually.*" Compl. ¶ 3 (emphasis added). While the Court is left to query Plaintiff's precise intent with respect to this statement, the Sixth Circuit has determined that "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 404 (6th Cir.1997); *see also Satterfield v. Tenn.*, 295 F.3d 611, 616–19 (6th Cir.2002). As Plaintiff has provided no basis for departure from this principle and has not sought to establish

---

2. Unlike Title VII, Ohio law permits assessing supervisor liability against individually named Defendants under certain circumstances. *See Genaro v. Cent. Transp., Inc.*, 84 Ohio St.3d 293, 703 N.E.2d 782 (1999). However, Plain-

tiff does not address this aspect of Ohio law in her opposition. Nor have the parties been given an opportunity to conduct discovery on such a claim.

that any of the individually named defendants are a Title VII "employer," the Court will grant summary judgment to Davis, Diller, and Graf on all Title VII claims in Count I–III.

### D. Counts I and II—Sexual harassment and hostile work environment

#### 1. Categorizing Plaintiff's claims

■■ In Count I, Plaintiff alleges sexual harassment. In Count II, Plaintiff alleges a hostile work environment resulting from sexual harassment. With respect to Count I, it is not clear whether Plaintiff seeks to assert this as a quid pro quo claim, or if the claim is in reality an extension of her hostile work environment claims. The Complaint makes no allegations involving fulfilled threats resulting from Plaintiff's refusal to submit to Diller's alleged overtures. Such would be the nature of a typical quid pro quo claim. Plaintiff does allege that Diller's comments eventually caused her to leave her job. Beyond this allegation, however, Plaintiff does not attempt to further establish a claim of constructive discharge. *See Logan v. Denny's, Inc.*, 259 F.3d 558 (6th Cir.2001); *Walker v. Nat'l Revenue Corp.*, 2002 WL 1787983, 43 Fed.Appx. 800, 803, 805 (6th Cir.2002) ("[t]o establish a constructive discharge, the plaintiff must show that his working conditions were so difficult or unpleasant that a reasonable person in his situation would have felt compelled to resign, and that the impact of the employer's conduct on the employee was reasonably foreseeable"). Moreover, the Supreme Court has construed claims such as those alleged in the instant action as hostile work environment, as opposed to quid pro quo claims. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753–54, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (distinguishing between explicit and constructive "alterations in the terms or conditions of employment" and categorizing the latter as a hostile work environment claim). Therefore, the Court regards Count I as more properly construed as a hostile work environment claim, and analyzes it as such.[3]

#### 2. Hostile work environment

■ In hostile work environment claims, "courts distinguish between harassment by supervisors or management and harassment by co-workers." *Courtney v. Landair Transp., Inc.*, 227 F.3d 559, 564 (6th Cir.2000). Plaintiff alleges the former in the instant action. The Supreme Court has determined that "an employer is vicariously liable for actionable discrimination caused by a supervisor, but subject to an affirmative defense looking to the reasonableness of the employer's conduct as well as that of a plaintiff victim." *Faragher v. City of Boca Raton*, 524 U.S. 775, 780, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

As explained by the Sixth Circuit:

**3.** To the extent Count I attempts to assert a quid pro quo, as opposed to a hostile work environment claim, the Court notes that the difference is largely irrelevant with respect to an employer's liability. As explained by the Sixth Circuit:

In *Faragher* and *Ellerth*, two decisions released on the same day, the Supreme Court clarified when an employer would be held liable for sexual harassment committed by a supervisor. The Court suggested the distinction between 'quid pro quo' and 'hostile environment' sexual harassment was of limited utility, and redrew the test for vicarious liability.

*Idusuyi v. Tenn. Dep't of Children's Servs.*, 2002 WL 220640, 30 Fed. Appx. 398, 400, (6th Cir.2002). Nonetheless, the Supreme Court has still endorsed the categories as useful for determining the preliminary issue of whether conduct constitutes actionable discrimination, which is at issue in the instant action. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753–54, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 561 n. 2 (6th Cir.1999).

... In *Burlington Industries v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998), the Supreme Court again held that an employer's liability in sexual harassment cases is governed by common law agency principles and specifically adopted section 219(2) of the Restatement (Second) of Agency as setting out the governing principles:

"A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:

(a) the master intended the conduct or the consequences, or

(b) the master was negligent or reckless, or

(c) the conduct violated a non-delegable duty of the master, or

(d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation."

Restatement (Second) of Agency § 219(2) (1985) (emphases added). In *Ellerth*, the Supreme Court concluded that subsection (d)—and specifically the last clause thereof ("or he was aided in accomplishing the tort by the existence of the agency relation")—applies in supervisor harassment cases and therefore does not require a showing of negligence or reckless conduct under subsection (b) in order to bring the case within the supervisor's "scope of employment." Hence the Court concluded that employers may be held, subject to certain affirmative defenses, vicariously liable in supervisor sexual harassment cases. *See Ellerth*, 118 S.Ct. at 2267. *Courtney*, 227 F.3d at 564.

█ The foregoing test for an employer's vicarious liability for a supervisor's conduct has altered the Sixth Circuit test for employer liability in a hostile work environment claim. In the context of a hostile work environment claim, a Plaintiff must now establish: (1) she was a member of a protected class; (2) she was subject to unwelcomed sexual harassment; (3) the harassment was based on her sex; and (4) the harassment created a hostile work environment. The fifth prong of the test, which formerly required a showing that "the supervisor's harassing actions were foreseeable or fell within his or her scope of employment, and the employer failed to respond adequately and effectively," *Williams*, 187 F.3d at 560–61, is now assessed in light of *Ellerth* and *Faragher*. An employer may now avoid liability "only if it took reasonable care to prevent and correct any sexually harassing behavior." *Id.* at 561.

In her deposition, Plaintiff discusses six events she felt specifically constituted sexual harassment. However, Plaintiff's deposition reveals numerous other incidents that the Court deems relevant to the hostile work environment claim: (1) Diller told her she was pretty while the two of them were alone together in a truck; (2) Diller told her that if he instructed her to get on top of a desk and stand in her underwear while he tucked dollar bills in her shorts, then she'd better get on top of the desk; (3) Diller left Plaintiff a note which read "OK with job,—I still want you to stay,—What I say stays between you and me"; (4) Diller once refused to let Plaintiff pass through a doorway by standing spread eagle in the door way, blocking Plaintiff's path, and commented that the only way she was going to get through the doorway was through him; (5) when a co-worker commented that he needed a ride home, Diller rubbed the inside of his cheek with his tongue and commented that Plaintiff would give him a good ride; (6) Diller commented that women were good for only one thing; (7) in response to a reference to a hole in Plaintiff's sweater, Diller made a comment about helping Plaintiff take off her sweater; (8) Diller allegedly spoke to

other employees about Plaintiff in a sexual manner; (9) Diller forbade Plaintiff to speak to a certain co-worker, with whom it was allegedly necessary for Plaintiff to speak to accomplish certain job tasks; and (10) Diller appeared jealous, commenting that Plaintiff should become a union employee if she wanted to lunch with the other male employees, when Plaintiff stopped eating in her office and instead starting dining with other employees who were male. In addition, Plaintiff alleges that after she filed her discrimination complaint: (1) she was belittled by Graf during a staff meeting that Plaintiff was not invited to attend; (2) communications, particularly complaints relevant to generating work orders, were diverted from her, allegedly in an attempt to prevent her from accomplishing her job duties; (3) she was required to fill out an employment application in order to maintain her status as a permanent employee; (4) she was directed not to discuss alleged incidents with other employees during work time and was instructed to keep conversations at work to job related topics; (5) upon requesting a transfer, she was informed that nothing could be done at the time; (6) Diller ceased oral communications with Plaintiff and instead reduced communication to writing and third-party communication; and (7) Diller told other employees to stay away from Plaintiff because she was trouble. These incidents are alleged to have occurred over a period of approximately six months.

Defendants assert that the alleged conduct was not severe or pervasive enough to give rise to a hostile work environment claim. Defendants alternatively argue that even if a hostile environment existed, DCE took prompt and corrective action and thus cannot be held liable for discrimination. The Court address both assertions below.

### a. Severe or pervasive

In determining whether an actionable hostile work environment claim exists, a court is to "look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *National Railroad Passenger Corporation v. Morgan,* —— U.S. ——, ——, 122 S.Ct. 2061, 2074, 153 L.Ed.2d 106 (2002) (quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Title VII "forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment." *Oncale v. Sundowner Offshore Servs.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). " 'Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview.' " *Id.* (quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). " 'When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.' " *Id.*

Defendants have raised numerous arguments in support of summary judgment, including, not limited to: (1) Plaintiff was insubordinate and by her own admission should have been fired; (2) Plaintiff never felt her job was in jeopardy;[4] (3) she was

---

4. Plaintiff actually states that she delayed in filing a claim because she did not feel as if she could afford to lose her job, Hoschak Depo. at 106, and felt that her job was in jeopardy after she filed her discrimination charge. Hoschak Depo. at 118.

not offended by certain jokes in the workplace; (4) she concedes she was not a victim of invasive physical contact; (5) Plaintiff was resentful of Diller "holding his authority over her" and controlling her; and (6) once the harassment was reported, the offensive conduct ceased.

■ Ultimately, after carefully considering each of Defendants' arguments, not limited to those listed above, in light of Plaintiff's opposition motion and deposition testimony, the Court determines that Plaintiff has raised an issue of material fact as to the severity and/or pervasiveness of the alleged conduct. This Court is to evaluate the alleged conduct as to, *inter alia*, frequency, severity, and "whether it unreasonably interferes with an employee's work performance." *National Railroad Passenger Corporation v. Morgan*, —— U.S. at ——, 122 S.Ct. at 2074. In the instant action, there are numerous incidents alleged to have occurred within a six month period of time. The Court has provided above a non-exhaustive list of seventeen such occurrences. Moreover, the alleged conduct, if true, created arguably serious obstacles to Plaintiff performing her job duties.

### b. Subjective component

■ The Court recognizes that Defendants have argued Plaintiff did not subjectively perceive the alleged conduct as hostile. "A hostile-work-environment plaintiff ... must ... establish that her environment was objectively hostile, and also that she subjectively perceived the environment to be hostile." *Williams*, 187 F.3d at 564. Defendants note that Plaintiff regarded some of the allegedly offensive comments to have been delivered in a joking manner and did not find many of Diller's comments to be of a sexual nature, to have been directed at her personally, or to create a threat of physical harm. However, this Circuit has made clear that non-

sexual conduct can give rise to a hostile environment claim. *See id.* at 565 (explaining that "harassing that is not sexually explicit but is directed at women and motivated by discriminatory animus against women satisfies the 'based on sex' requirement"). Moreover, the subjective test does not require that the Plaintiff feel physically threatened. *See id.* at 566. Nor is the intent, joking or otherwise, of the alleged harasser dispositive. *See id.*

Admittedly, in her deposition Plaintiff responded to the question "do you feel you were a victim of gender-based harassment?" with "[t]o a point, but not to an extreme, no." Plaintiff further stated that certain comments didn't bother her. However, Plaintiff also states in her deposition that the cumulative effect of the alleged conduct was to make her feel discriminated against. She also felt as if Defendants were trying to "push[ ][her] right out that door." Hoschak Depo. 150. Based on the entirety of Plaintiff's deposition testimony, the Court cannot say, as a matter of law, that the evidence is so one-sided as to preclude a finding that Plaintiff subjectively regarded her work environment as hostile.

### c. DEC's response

■ Defendants erroneously assert "[a]n employer that takes prompt and effective action after an employee brings a complaint of sexual harassment to it cannot be held liable for hostile work environment sexual harassment as a matter of law." DCE Mot. at 23. As indicated above, this is no longer the standard for employer liability in hostile work environment claims, at least with respect to liability predicated upon supervisor conduct, since the Supreme Court's decisions in 1998 in *Ellerth* and *Faragher*:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created

by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by preponderance of the evidence.... The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Faragher*, 524 U.S. at 807, 118 S.Ct. 2275.

■■■ In the instant action, DCE simply fails to address the correct and relevant standard of liability, instead relying upon an outdated and partially abrogated standard of liability. Notably, DCE does not address whether there has been a tangible employment action. It does argue that there was no constructive discharge, but it does not address whether other allegations, particularly those going to alleged impediments in the performance of Plaintiff's job duties, might constitute a tangible employment action. "No affirmative defense is available ... when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Faragher*, 524 U.S. at 775, 118 S.Ct. 2275.

Moreover, even if there were no tangible employment action and DCE thus were entitled to assert an affirmative defense, DCE has not addressed the elements necessary to establish this defense. Even construing arguments raised by Defendants as implicitly going to these elements, the arguments are not persuasive. Defendants argue that Plaintiff did not speak with Davis or Graf prior to filing her charge. But they do not explain why she was required to do so under the policy in effect at the time of the alleged harassment, or why her failure to do so was unreasonable. Defendants complain that Plaintiff discusses the alleged harassment with just about everybody in the office, but they don't explain how this is relevant to either Plaintiff's prima facie case or to a potential affirmative defense for DCE. Defendants list a number of corrective actions implemented by DCE, such as a revised sexual harassment policy, employee training for garage employees and office personnel, separation of Diller and Plaintiff, and a third party presence when Plaintiff and Diller needed to communicate. These actions would be clearly relevant to prong (a) of the affirmative defense, but DCE does not address the relevant standard and thus fails to meet its burden on summary judgment. Defendants also assert that Plaintiff prepared an appeal after spending only one day on the job with the corrective procedures in place. This assertion is arguably relevant to prong (b) of the affirmative defense. However, Defendants offer no argument or discussion as to why this assertion weighs in favor of a finding for DCE with respect to its affirmative defense.

Ultimately, as DCE has failed to present the correct standard to the Court and place its assertions within the proper legal context, it is not entitled to summary judgment. Based on the foregoing, the Court will deny summary judgment to DCE on Counts I–II.

### E. Count III—Retaliation

■■■ Section 705(a) of Title VII, 42 U.S.C. § 2000e 3(a), prohibits an employer from retaliating against an employee for filing a discrimination charge. To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate: (1) that plaintiff engaged in an activity protected by Title VII; (2) that the exercise of [the plaintiff's] civil rights was

known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.

*Williams,* 187 F.3d at 568.

Defendants assert that this claim fails because Plaintiff did not engage in a protected activity, was not subject to an adverse employment action, and cannot establish a causal link.

### 1. Protected activity

Defendants assert that it is questionable whether Plaintiff was engaged in a protected activity when she was reprimanded and instructed not to discuss the harassment claim with coworkers. However, Defendants do not develop this argument, and the reprimand is not the only basis for Plaintiff's retaliation claim. Plaintiff filed a charge of discrimination, and such an action is clearly a protected activity under Title VII.

### 2. Adverse employment action

For purposes of a Title VII retaliation claim, an adverse employment action is a "materially adverse change" in the terms and conditions of a plaintiff's employment. *See Bowman v. Shawnee State Univ.,* 220 F.3d 456, 461 (6th Cir.2000).

[A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices

that might be unique to a particular situation.

*Hollins v. Atlantic Co.,* 188 F.3d 652, 662 (6th Cir.1999).

▆▆▆ Based on Plaintiff's allegations, she has not suffered a typical adverse employment action, such as termination, demotion, or loss of benefits.[5] However, the allegations, if true, arguably implicate the "other indices" portion of the formula. Defendants are alleged to have prevented Plaintiff from corresponding with a particular co-worker, excluded her from at least one employment meeting, rerouted certain communications, *i.e.,* incoming complaints, from Plaintiff that she otherwise would have received and been responsible for dealing with as part of her job, and warned other employees to stay away from Plaintiff. Based upon these allegations, Plaintiff has raised a genuine issue of material fact as to whether Defendants' actions made it difficult or impossible for Plaintiff to complete her daily job assignments, or otherwise materially altered the nature of her job.

### 3. Causal link

DCE asserts that there is no casual link between the discrimination charge and either the perceived reprimand or any constructive discharge. However, this argument ignores the fact that Plaintiff also alleges that Defendants prevented her from fully participating in her daily job tasks, an issue on which the Court has found Plaintiff to have raised an issue a material fact sufficient to withstand summary judgment. As DCE does not address this aspect of Plaintiff's claim, it is not entitled to summary judgment.

For the reasons stated above, the Court will deny summary judgment to DCE on Count III.

---

**5.** As indicated *supra,* Plaintiff has not established constructive discharge, even though

Defendants' motion raises this issue.

### F. Count IV—Negligent/Intentional Infliction of Severe Emotional Distress

#### 1. Intentional infliction of emotional distress

■ To sustain a claim of intentional infliction of emotional distress under Ohio law, a plaintiff must prove four elements:
1) that defendants either intended to cause emotional distress or knew or should have known that their actions would result in serious emotional distress to the plaintiff;
2) that defendants' conduct was extreme and outrageous;
3) that defendants' actions were the proximate cause of plaintiff's psychic injury; and
4) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure it.

*Pyle v. Pyle,* 11 Ohio App.3d 31, 34, 463 N.E.2d 98 (1983).

■ Even if the Court accepts as true all of Plaintiffs' assertions concerning the Defendants' conduct, their behavior is not of such an extreme nature that it would cause an average member of the community to find it outrageous. Although the alleged conduct, even when considered cumulatively, may be considered crude or boorish, it is does not fall outside the bounds of decency. *See Thatcher v. Goodwill Indus. of Akron,* 117 Ohio App.3d 525, 690 N.E.2d 1320 (1997). Accordingly, Defendants are entitled to summary judgment on Count IV as to intentional infliction of emotional distress.

#### 2. Negligent infliction of emotional distress

■ "A claim of negligent infliction of emotional distress is limited to instances 'where the plaintiff has either witnessed or experienced a dangerous accident or appreciated the actual physical peril.'" *Bun-* ger v. Lawson Co., 82 Ohio St.3d 463, 466 696 N.E.2d 1029, 1032 (1998) (quoting *Heiner v. Moretuzzo,* 73 Ohio St.3d 80, 86–87, 652 N.E.2d 664, 669 (Ohio 1995)). Plaintiff in the instant action has not alleged such a claim. Accordingly, Defendants will be granted summary judgment as to negligent infliction of emotional distress.

### G. Motion to Strike

■ Plaintiff has submitted her affidavit, which is signed and notorized, but undated by either the notary or Plaintiff. Exhibit A2 to the affidavit, which is represented as a statement of reasons why Plaintiff filed her discrimination charge, is incorporated and made part of the affidavit, but is not separately signed or dated and does not indicate when or in what context this document was prepared. Defendants have moved to strike Plaintiff's affidavit in its entirety because it is not dated. Alternatively, Defendants have moved to strike several individual statements within Plaintiff's affidavit as conclusory, hearsay, redundant, contradictory to Plaintiff's deposition testimony, or otherwise inadmissible. Defendants also move to strike the entirety of Exhibit A2 attached to the affidavit because the document was not produced during discovery and because it is not separately dated. Defendants alternatively move to strike individual statements within Exhibit A2. Plaintiff has not opposed Defendants' motion to strike.

The Court declines to strike the affidavit in its entirely simply because it is not dated, but does note that several statements within both contested documents arguably are contradictory to Plaintiff's deposition testimony, hearsay, conclusory, or subject to exclusion on other grounds. Nonetheless, the Court has decided the pending motions without reference to the contested documents, and thus will deny Defendants' motion as moot. Should

Plaintiff seek to utilize either of the contested documents at a later stage in these proceedings, Defendants may renew their motion at that time.

### III. CONCLUSION

Based upon the foregoing, Defendant Diller's motion for summary judgment (Doc. No. 40) will be granted as to all claims. The remaining motion for summary judgment (Doc. No. 43) will be denied as to DCE on Counts I–III, granted as to DCE on Count IV, and granted as to Davis and Graf on all claims. DCE's Motion to Strike (Doc. No. 47) will be granted in part. The claims remaining in this action are Counts I–III as against DCE.

IT IS SO ORDERED.