**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0455n.06
Filed: May 31, 2005

No. 04-1519

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

ROOFERS LOCAL 149 JOINT )
APPRENTICESHIP FUND, a Trust )
Fund Established and Administered )
Pursuant to Federal Law, )
      ) **ON APPEAL** FROM THE
      ) UNITED STATES DISTRICT
     **Plaintiff-Appellant,** ) COURT FOR THE EASTERN
      ) DISTRICT OF MICHIGAN
v. )
      )
BLOOM ROOFING SYSTEMS, a ) **O P I N I O N**
Michigan Corporation, )
      )
     **Defendant-Appellee.** )
_____ )

Before:  KENNEDY and MOORE, Circuit Judges, and RESTANI,[*] Judge.

**KAREN NELSON MOORE, Circuit Judge.**  In the underlying Employee Retirement

Income Security Act ("ERISA") § 515 suit, Plaintiff-Appellant Roofers Local 149 Joint

Apprenticeship Fund ("Local 149 JAF") seeks to recover differential payments from Defendant-

Appellee Bloom Roofing Systems ("Bloom"), a roofing company based in the home area of the

United Union of Roofers, Waterproofers & Allied Workers Local No. 70 ("Local 70"). Specifically,

Local 149 JAF alleges that, when Bloom provided roofing services in the geographic region

represented by United Union of Roofers, Waterproofers & Allied Workers Local No. 149 ("Local

149"), the Local 149 collective bargaining agreement required Bloom to make "differential"

_____

[*]The Honorable Jane A. Restani, Chief Judge of the U.S. Court of International Trade, sitting
by designation.

payments to the Local 149 JAF if the fringe benefits Bloom owed under its collective bargaining agreement with Local 70 were less than the fringe benefits provided for in the Local 149 agreement. Bloom counters that it does not owe any differential payments to Local 149 JAF because the Local 70 fringe-benefit package exceeds that of Local 149 due to the inclusion of a $2.00 per hour subsistence payment. Ruling on cross-motions for summary judgment, the district court below denied Local 149 JAF's motion and entered judgment in favor of Bloom. For the reasons set forth below, we **AFFIRM** the district court's denial of Local 149 JAF's motion for summary judgment, **REVERSE** the district court's order granting Bloom's motion for summary judgment, and **REMAND** this case to the district court for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Factual Background

Two local unions, Local 70 and Local 149, represent Michigan members of the United Union of Roofers, Waterproofers & Allied Workers ("Roofers Union"). Bloom is based in Ann Arbor, Michigan, which falls within the scope of Local 70; however, Bloom provides roofing services throughout the state of Michigan, including regions served by Local 149. Bloom has also adopted the collective bargaining agreements for both Local 70 and Local 149.[1]

_____

[1]As a member of the J.L.W. Roofing Contractors Association, Defendant-Appellee Bloom Roofing Systems ("Bloom") entered into two collective bargaining agreements with United Union of Roofers, Waterproofers & Allied Workers Local No. 70 ("Local 70"), the first covering the period June 1, 1994 through May 31, 2000, and the second covering the period June 1, 2000 through May 31, 2003.

Bloom also entered into two agreements with United Union of Roofers, Waterproofers & Allied Workers Local No. 149 ("Local 149"). First, Bloom and Local 149 executed a Reciprocal Agreement and Release in March 1999, in which Bloom agreed to adopt "with certain modifications" the collective bargaining agreement between Local 149 and the Southeastern Michigan Roofing Contractors Association ("SMRCA"). Joint Appendix ("J.A") at 120 (March 1999 Reciprocal Agreement and Release ¶ 4). Although this collective bargaining agreement covered the period June 1, 1998 through May 31, 2000, the Reciprocal Agreement and Release

2

The case at bar focuses on provisions of the Local 70 and Local 149 collective bargaining agreements referred to as "competition-leveling" clauses. Put simply, a competition-leveling clause requires that, when an employer hires members of one local union to perform services in a geographic region served by another local union, the employer must pay wages and fringe benefits according to the higher of the two local unions' scales. The Constitution of the Roofers Union requires local unions to include such competition-leveling provisions in their collective bargaining agreements in order to prevent a "race to the bottom" by local unions seeking to gain a competitive edge over one another by lowering wages and fringe benefits.[2] Thus, Local 149 has included the following competition-leveling provision (hereinafter referred to as "Article 31") in its 1998-2000 and 2000-2003 collective bargaining agreements:

---

stated that Bloom agreed to be bound by the collective bargaining agreement only as of January 1, 1999. On March 27, 2002, Bloom entered into its second agreement with Local 149 by signing a Memorandum of Adoption, in which Bloom "agree[d] to adopt and be bound by all terms and conditions set forth" in the collective bargaining agreement between Local 149 and SMRCA covering the period June 1, 2000 through May 31, 2003. J.A. at 171 (Local 149 2000-2003 Collective Bargaining Agreement Memorandum of Adoption).

[2]Article II, § 2 of the Roofers Union Constitution provides that:
> Each Local Union shall require any of its members working in the territory of another Local Union, whose total wage and fringe benefits are higher, to demand and receive the higher wage and fringe benefits. Each Local Union shall negotiate a collective bargaining clause that signatory employers who work in the jurisdiction of the sister local shall contribute to the fringe benefit programs maintained by the sister local where the employees are working.
> If a contractor has been paying into any of the above mentioned funds in his territory he shall not be obligated to pay into another fund, unless after paying the higher wages to his employees and paying all contributions into all of its established funds, the total package is still below that of the sister Local Union's territory, in which case the employer shall be obligated to pay the difference into whatever fringe benefit funds the sister Local Union has provided for in its collective bargaining agreement.

J.A. at 645.

3

> An Out-of-Town Contractor on a job within the geographical area covered by this Agreement will pay visiting roofers (i.e., roofers from a Local other than Local 149) whichever total package of wages (including vacation pay) and fringes are higher — either their Local Union package or the Local 149 package. Vacation pay is considered wages for the purposes of this Article. If the Local 149 package is higher due to wages, visiting roofers will be paid the difference in wages. If the Local 149 package is higher due to fringes, the difference will be paid to the Roofers Local 149 Joint Apprenticeship Fund.

Joint Appendix ("J.A.") at 113 (Local 149 1998-2000 Collective Bargaining Agreement art. 31, § 2(b)); J.A. at 167 (Local 149 2000-2003 Collective Bargaining Agreement art. 31, § 2(b)).

In this case, Local 149 JAF (a fund established by Local 149's collective bargaining agreement) claims that the fringe benefits provided under the Local 70 collective bargaining agreements are less than those set forth in the Local 149 collective bargaining agreements, and that Article 31 requires Bloom to make payments to Local 149 JAF equal to the difference between the two local unions' fringe-benefit packages. Both parties in this action have taken the view that whether Bloom owes any payments to Local 149 JAF under Article 31 depends on the classification of a $2.00 per hour "subsistence payment" that the Local 70 collective bargaining agreement requires employers to pay to their roofing employees. Bloom contends that the $2.00 per hour subsistence payment constitutes a fringe benefit and, as a result, the Local 70 fringe benefit package exceeds that of Local 149 and no differential payment is owed to Local 149 JAF. Local 149 JAF, in contrast, asserts that the $2.00 per hour subsistence payment constitutes travel pay that should not be considered part of the Local 70 wage-and-fringe-benefit package and hence a differential does exist between the fringe benefits provided under the Local 70 and Local 149 agreements.

## B. District Court Proceedings

Based on its belief that Bloom failed to make differential payments as required by Article 31, Local 149 JAF filed suit against Bloom pursuant to § 515 of ERISA, 29 U.S.C. § 1145. Local

4

149 JAF and Bloom each filed a motion for summary judgment, directing their arguments primarily to the proper classification of the $2.00 per hour subsistence payment under the Local 149 collective bargaining agreement. The district court then issued a show-cause order directing the parties to address the relevancy of Article VIII of the Local 70 collective bargaining agreements ("Article VIII"), which provides in relevant part that "any contractor performing work under this AGREEMENT [i.e., Bloom] and working in a sister local[']s [i.e., Local 149's] jurisdiction that has wages and/or fringes higher than those contained in this collective bargaining agreement such higher wages and/or fringes shall be paid." J.A. at 595 (Local 70 1994-2000 Collective Bargaining Agreement art. 8, § 1); J.A. at 700 (Local 70 2000-2003 Collective Bargaining Agreement art. 8, § 1). After receiving briefing from the parties regarding the impact of Article VIII, the district court denied Local 149 JAF's motion for summary judgment and entered judgment in favor of Bloom. Local 149 JAF now appeals the district court's ruling.

## II. ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). We review de novo a district court's order granting summary judgment, and in conducting such a review, we view all the evidence in the light most favorable to the non-moving party. *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). In this case, we also review de novo the district court's order denying on legal grounds Local 149 JAF's motion for summary judgment because, "[a]lthough the district

5

court's denial of a motion for summary judgment is usually treated as a nonappealable interlocutory order, when an appeal from a denial of summary judgment is presented in tandem with a grant of summary judgment, this court has jurisdiction to review the propriety of the district court's denial of summary judgment." *Le-Ax Water Dist. v. City of Athens*, 346 F.3d 701, 704 (6th Cir. 2003).

## B. ERISA § 515

The present suit arises under § 515 of ERISA, which provides that:

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Section 515 allows multiemployer plans like Local 149 JAF "to rely on the literal terms of written commitments between the plan, the employer, and the union" by rendering "immaterial" the "actual intent of and understandings between the contracting parties." *Bakery and Confectionery Union and Indus. Int'l Health Benefits and Pension Funds v. New Bakery Co. of Ohio*, 133 F.3d 955, 959 (6th Cir. 1998) ("The fund thus stands much like a holder in due course in commercial law who is entitled to enforce the writing without regard to understandings or defenses applicable to the original parties.") (internal quotation marks and citation omitted). Thus, we focus our attention in this case on the specific provisions of Local 70's and Local 149's collective bargaining agreements to determine whether Local 149 JAF is entitled to recover differential payments from Bloom.

## C. Designation of Fringe-Benefit-Differential Recipient

The district court below entered summary judgment in favor of Bloom on the basis that, regardless of whether a differential actually exists between the Local 70 and Local 149 compensation packages, Local 149 JAF would not be the proper recipient of any differential

payments owed by Bloom. The district court's conclusion rested on the belief that Article VIII of the Local 70 collective bargaining agreement is unambiguous and requires that Local 70 employees be the recipients of any increases in wages or fringe benefits paid pursuant to a competition-leveling provision.

We, however, do not share the district court's view that Article VIII is unambiguous in requiring that Local 70 employees and their funds be the recipients of any differential payments made by Local 70-area employers operating in areas served by other local unions. *See Northwestern Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018, 1025 (6th Cir. 2001), *cert. denied*, 535 U.S. 1017 (2002) ("Whether a contract term is ambiguous is a question of law for the court to determine."). As the district court acknowledged, "the relevant provision [Article VIII] does not specify that the higher wages and/or fringes must be paid to Local 70 employees, and simply states that the 'higher wages and/or fringes shall be paid.'" J.A. at 22 (D. Ct. Op. at 11) (quoting Local 70 2000-2003 Collective Bargaining Agreement art. VIII). The district court reasoned that, because it was generally accepted that Local 70 employees would receive any increase in *wages* resulting from a competition-leveling provision, any increase in *fringe benefits* also must be paid to the Local 70 employees, either directly or through the funds established by the Local 70 collective bargaining agreement.

We believe, however, that although a common-sense reading of Article VIII is that any increase in wages should be paid to Local 70 employees, it is not so obvious that an increase in fringe benefits must also be paid to Local 70 employees or Local 70 funds. While the district court's interpretation of Article VIII as requiring payment to the Local 70 employees and their funds is an entirely reasonable one, we also believe that it is plausible to read Article VIII as allowing other local unions' funds to receive the increase in fringe-benefit payments when employers operate in

7

their areas. That Article VIII is susceptible to two plausible interpretations is further reinforced by the fact that the Roofers Union Constitution appears to suggest that increases in fringe benefits should be paid according to the rules set forth by the local union where the work was performed and not the employees' own local union. J.A. at 645 (Roofers Union Const. art. II, § 2) ("If a contractor has been paying into any of the above mentioned funds in his territory he shall not be obligated to pay into another fund, unless after paying the higher wages to his employees and paying all contributions into all of its established funds, the total package is still below that of the sister Local Union's territory, in which case *the employer shall be obligated to pay the difference into whatever fringe benefit funds the sister Local Union has provided for in its collective bargaining agreement*.") (emphasis added); *see also Int'l Union, United Mine Workers of Am. v. Apogee Coal Co.*, 330 F.3d 740, 747 (6th Cir. 2003) ("'Extrinsic evidence can become a consideration *before* an ambiguity has been identified from the face of the contract as a matter of law, in the limited sense that such evidence can assist the court in determining whether, as a matter of law, two plausible interpretations exist in the manner necessary to give rise to the *existence* of an ambiguity.'") (quoting *Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672, 684 n.12 (6th Cir. 2000)). Because we do not believe that Article VIII of the Local 70 collective bargaining agreement unambiguously restricts funds like Local 149 JAF from recovering fringe-benefit payments from employers like Bloom who operate outside of Local 70's jurisdiction, we cannot affirm the district court's entry of summary judgment in favor of Bloom on such a basis.

## D. Calculation of Differential

In light of our determination that the Local 70 collective bargaining agreement does not unambiguously prevent Local 149 JAF from recovering in this case, we must turn to the question

8

left unanswered by the district court, i.e., whether a differential existed between the fringe benefits owed under the Local 70 and Local 149 collective bargaining agreements.

### 1. Formula for Calculating Differential

We note at the outset that Article 31 of the Local 149 collective bargaining agreement and Article VIII of the Local 70 collective bargaining agreement utilize somewhat different formulas for determining whether or not a differential exists. Under the terms of Article 31, Bloom only owes a differential payment to the Local 149 JAF if: (1) the Local 149 collective bargaining agreement's "*total package* of wages (including vacation pay) and fringes are higher" than the Local 70 package, and (2) "the Local 149 package is higher due to fringes." J.A. at 167 (Local 149 2000-2003 Collective Bargaining Agreement art. 31, § 2(b)) (emphasis added). In contrast, Article VIII of the Local 70 collective bargaining agreement suggests that wages and fringe benefits should be compared separately, such that an employer might be required to pay wages according to one local union's scale but provide the other local union's fringe-benefit package. J.A. at 700 (Local 70 2000-2003 Collective Bargaining Agreement art. 8, § 1) ("[A]ny contractor performing work under this AGREEMENT [i.e., Bloom] and working in a sister locals [sic] jurisdiction that has wages *and/or* fringes higher than those contained in this collective bargaining agreement such higher wages *and/or* fringes shall be paid.") (emphasis added). Because Local 149 JAF has asserted that its entitlement to differential payments arises from the Local 149 collective bargaining agreement, and because an employer's obligations to make differential payments are less onerous under the Local 149

9

agreement than the Local 70 agreement,[3] we base our analysis here on the method of calculation set forth in Article 31 of the Local 149 agreement.

## 2. Classification of $2.00 Per Hour Subsistence Payment

The central question at issue in this case is how the $2.00 per hour subsistence payment provided under the Local 70 collective bargaining agreement should be characterized for purposes of calculating the differential between the Local 70 and Local 149 wage-and-fringe-benefit packages. Local 149 JAF asserts that the $2.00 per hour subsistence payment provided in the Local 70 agreement constitutes travel pay, which Article 31 specifically excludes from the differential calculation. Bloom, on the other hand, contends that the $2.00 per hour subsistence pay qualifies as a fringe benefit that should be included as part of Local 70's wage-and-fringe-benefit package.

As an initial matter, we agree with Local 149 JAF that travel pay should not be included when calculating the differential under Article 31 because the Local 149 collective bargaining agreement consistently treats travel pay as an amount separate and distinct from wages and fringe benefits. J.A. at 166 (Local 149 2000-2003 Collective Bargaining Agreement art. 30 § 2(f)) ("Local 149 Employers will pay travel pay according to the provisions of each roofer's home area Agreement. Travel pay is not wages or a fringe benefit."); J.A. at 167 (Local 149 2000-2003 Collective Bargaining Agreement art. 31 § 2(a)) ("An Out-Of-Town Contractor who is signatory to

---

[3]Take, for instance, the following example. Under the Local 70 collective bargaining agreement, the baseline wage rate is $15 per hour, and fringe benefits also amount to $15 per hour. The Local 149 collective bargaining agreement, however, establishes a baseline wage rate of $20 per hour and fringe benefits of $10 per hour. Using the Local 149 differential-calculation method, an employer like Bloom would owe no differential payment because the total packages under both agreements are equal (i.e., $30 per hour). Under one plausible view of the Local 70 formula, however, the employer would owe wages of $20 per hour and fringe benefits of $15 per hour, resulting in a $5 per hour differential payment owed.

this Agreement shall pay all travel pay, wages, fringes and other benefits of this Agreement to all Local 149 roofers working on any jobs within the geographical area covered by this Agreement.").

We disagree with Local 149 JAF, however, with respect to its assertion that the $2.00 per hour subsistence payment constitutes travel pay. The $2.00 per hour subsistence payment provision is set forth in Article XIV of Local 70's 2000-2003 collective bargaining agreement, which reads in relevant part:

ARTICLE XIV
TRAVEL EXPENSES AND SUBSISTENCE PAY

SECTION ONE        All employees shall receive an hourly subsistence of TWO DOLLARS ($2.00) FOR EACH HOUR OR PARTIAL HOUR WORKED. IN ADDITION, TRAVEL PAY SHALL BE PAID AS FOLLOWS: The free zone shall have a radius of FIFTY-FIVE (55) miles from the intersection of I-96 and U.S. 23 located at Brighton, Michigan. Zone one – a maximum of SIXTY-FIVE (65) miles with travel expenses of TWENTY-FOUR DOLLARS AND NINETY-SEVEN CENTS ($24.97). If employees are told to report to a job located between FIFTY-FIVE (55) and SIXTY-FIVE (65) miles and they do not work, they will be paid TWENTY-FIVE DOLLARS ($25.00) show up time. If adverse weather prohibits the start of work on jobs located in zone one travel expenses will not be paid, unless the employee is instructed to go to the job, by the employer or his representative.

J.A. at 177 (Local 70 2000-2003 Collective Bargaining Agreement art. XIV, § 1). Although the $2.00 per hour subsistence payment provision is included in the same article and section as the travel pay provision, this alone does not render the $2.00 per hour subsistence payment part of Local 70 employees' travel pay. Indeed, § 1 defines travel pay as a separate amount to be paid "in addition" to the $2.00 per hour subsistence payment. Moreover, the total subsistence payment received by an employee wholly depends on the number of hours the employee works and bears no correlation to the time an employee spends traveling, the distance the employee travels, or the expenses the

11

employee incurs as a result of travel. *See Williams v. Great Lakes Dredge and Dock Co.*, 726 F.2d 278, 281 (6th Cir. 1984). Hence, we conclude that the $2.00 per hour subsistence payment does not qualify as travel pay and thus should not be excluded from Local 70's total wage-and-fringe-benefit package for purposes of determining whether a differential exists between the Local 70 and Local 149 packages.

We cannot sustain entry of summary judgment in favor of Bloom, however, because we cannot say, based on the record before us, that the $2.00 per hour subsistence payment constitutes a fringe benefit rather than wages. The Local 149 audit spreadsheets, which compare the wages and fringe benefits for journeymen under the Local 70 and Local 149 agreements, indicate that, even if the $2.00 per hour subsistence payment is included as part of Local 70's total package of wages and fringe benefits, the Local 149 package still exceeds the Local 70 package, requiring Local 70 employers to make differential payments. J.A. at 303-04 (when $2.00 per hour subsistence payment is included in Local 70 package, indicating existence of a differential in the total of wages and fringe benefits of $4.93 for period June 1, 2000 to May 31, 2001; a $3.53 differential for period June 1, 2001 to May 31, 2002; and a $4.18 differential for period June 1, 2002 to May 31, 2003). Thus, categorization of the $2.00 per hour subsistence payment as either wages or a fringe benefit is necessary in order to determine to what extent the Local 149 package is "higher due to fringes," and thus what portion of the differential should be paid to Local 149 JAF. J.A. at 167 (Local 149 2000-2003 Collective Bargaining Agreement art. 31, § 2(b)).

The proper categorization of the $2.00 per hour subsistence payment is made rather difficult by the fact that the Local 149 collective bargaining agreement does not specifically define "wages" or "fringe benefits." The ordinary definitions of these terms would seem to suggest that the $2.00 per hour subsistence payment constitutes wages because it is represents direct compensation to the

employee based on the amount of time worked. *Compare* MICH. COMP. LAWS § 408.471(e) ("'Fringe benefits' means compensation due an employee pursuant to a written contract or written policy for holiday, time off for sickness or injury, time off for personal reasons or vacation, bonuses, authorized expenses incurred during the course of employment, and contributions made on behalf of an employee."), *and*, BLACK'S LAW DICTIONARY (8th ed. 2004) (defining "fringe benefit" as "[a] benefit (other than direct salary or compensation) received by an employee from an employer, such as insurance, a company car, or a tuition allowance"), *with* J.A. at 374 (Ltr. from Internal Revenue Service Technical Assistance Section Chief) ("The subsistence payments of $2.00 per hour for Roofers Union Local 70 workers are taxable as wages. . . . The extra money is considered a raise in wages, and the wages are taxable."), *and* MICH. COMP. LAWS § 408.471(f) ("'Wages' means all earnings of an employee whether determined on the basis of time, task, piece, commission, or other method of calculation for labor or services except those defined as fringe benefits under subdivision (e) above."), *and Williams*, 726 F.2d at 281, *and* BLACK'S LAW DICTIONARY (8th ed. 2004) (defining "wage" as "[p]ayment for labor or services, usu. based on time worked or quantity produced; specif., compensation of an employee based on time worked or output of production").

However, we decline to grant summary judgment to Local 149 JAF on the basis that the $2.00 per hour subsistence payment constitutes wages because Local 149 JAF has not raised such an argument on appeal. Indeed, Local 149 JAF has argued that the $2.00 per hour subsistence payment is *not* a wage but rather travel pay. *See* Pl.-Appellant's Reply Br. at 8 ("The hourly $2.00 subsistence pay quoted above bears no characteristics of a wage. . . ."); *id*. at 9 ("Subsistence pay, by its very definition and nature, is not a wage; it is instead a form of reimbursement for basic, minimal costs associated with travel."). As a result, entry of summary judgment in favor of either party would be premature at this time.

13

## III.  CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's denial of Local 149 JAF's motion for summary judgment, we **REVERSE** the district court's order of summary judgment in favor of Bloom, and we **REMAND** for further proceedings consistent with this opinion.